Karl J. KIRCHBERG, Plaintiff-Third Party Defendant-Appellee,

v.

Joan Paillot FEENSTRA, Defendant-Third Party Plaintiff-Appellant,

v.

Edwin W. EDWARDS and State of Louisiana, Third Party Defendants-Appellees.

No. 77–1991.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1979.

---

**23.** *See* op. of the court, p. 706, n.2, *supra.*

728

Barbara Hausman-Smith, White River Junction, Vermont, Va., George M. Strickler, Jr., New Orleans, La., for defendant-third party plaintiff-appellant.

Cynthia Samuel, Asst. Professor of Law, Tulane Univ. School of Law, New Orleans, La., for amicus curiae.

William J. Guste, Jr., Atty. Gen., Dept. of Justice, State of La., Louis M. Jones, Asst. Atty. Gen., Ronald C. Davis, Staff Atty., Alan F. Schoenberger, New Orleans, La., for third party defendants-appellees.

William R. Brough, New Orleans, La., for Kirchberg.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

We consider in this case the constitutionality of article 2404 [1] of the Louisiana Civil Code, which establishes the husband as the head and master of the community estate and gives him the power to alienate the community estate without the consent of the wife.

I

In February 1966, Joan and Harold Feenstra purchased a house in Orleans Parish, Louisiana. In October 1974, Mrs. Feenstra filed a state criminal charge on an unrelated matter against her husband. Mr. Feenstra was incarcerated on the charge, and while in prison he retained Karl J. Kirchberg to represent him in connection with the charge. Mr. Feenstra executed and delivered to Mr. Kirchberg a promissory note in the principal amount of $3,000, bearing interest at 8% per year, in payment of his legal fees. A few days later, Mr. Feenstra executed a mortgage on the Feenstras' family home as security for the payment of the promissory note. The home was the community property of the Feenstras and title was held in the name of both spouses. Mrs. Feenstra eventually dropped the charges against her husband, and upon his release from jail Mr. Feenstra moved into his own quarters. Subsequently, the Feenstras were legally separated and Mr. Feenstra moved out of Louisiana. After the separation, Mr. Kirchberg demanded payment of the note from Mrs. Feenstra and threatened seizure of her home. In February 1976, with the note remaining unpaid, Mr. Kirchberg petitioned for a mortgage foreclosure by executory process in state court. An order for executory process was issued directing the Civil Sheriff for the Parish of Orleans to seize and sell Mrs. Feenstra's home.

This action began in federal court in March 1976 when Mr. Kirchberg filed a petition for a declaratory judgment against Mrs. Feenstra, seeking a declaration that he

---

1. The Legislature of Louisiana completely revised the State's codal provisions relating to matrimonial regimes during the Legislature's 1979 regular session. Most of the revisions, including a new codal provision relating to management of community property, La.Civ. Code Ann. art. 2346 (West Cum.Pamphlet 1979), become effective January 1, 1980. *See generally* La.Civ.Code Ann. arts. 2325–2376 (West Cum.Pamphlet 1979). These revisions come too late to benefit Mrs. Feenstra, however. Article 2404 was in effect at all times during her marriage, and provides:

 The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.

 He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.

 Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.

 But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud.

 La.Civ.Code Ann. art. 2404 (West 1971). The new provision of the Louisiana Civil Code concerning management of community property, article 2346, provides: "Each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law." La.Civ.Code Ann. art. 2346 (West Cum. Pamphlet 1979) (effective Jan. 1, 1980).

was not a creditor under the Truth-in-Lending Act, 15 U.S.C. § 1635(a), and therefore was not liable for any disclosure violation under that Act with respect to the mortgage of the home. Mrs. Feenstra answered the complaint and asserted two counterclaims. In the first, she sought rescission of the mortgage for Truth-in-Lending disclosure violations. In the second, she sought a declaration that article 2334 [2] of the Louisiana Civil Code (which restricts the husband's power to alienate community immovables standing in the name of both spouses) was unconstitutional because it violated the equal protection and due process clauses of the fourteenth amendment. Mrs. Feenstra's second counterclaim was asserted against Edwin W. Edwards (the Governor of the State of Louisiana) and the State of Louisiana, as well as against Mr. Kirchberg. The State of Louisiana moved for summary judgment on Mrs. Feenstra's second counterclaim, and Mr. Kirchberg adopted that motion as his own. After oral argument was heard and supplemental memoranda were filed, the district court granted the motion for summary judgment

against Mrs. Feenstra, and Mrs. Feenstra appealed to this court. Mr. Kirchberg and Mrs. Feenstra subsequently dismissed their claim and counterclaim against each other on the Truth-in-Lending issue.

In ruling on the motion of the State of Louisiana for summary judgment, the district court correctly considered Mrs. Feenstra's complaint as directed primarily at article 2404 of the Louisiana Civil Code, which designates the husband as the head and master of the community and gives him the exclusive power to administer the community estate, rather than at article 2334, which restricts the husband's power to alienate community immovables standing in the name of both spouses. Article 2404 was the source of Mrs. Feenstra's misfortune; without it Mr. Feenstra would have had no power to encumber the family home without her consent.

■ We now hold that article 2404 of the Louisiana Civil Code violates the equal protection clause of the fourteenth amendment and we reverse.[3] In so doing, we apply our

---

**2.** At the time the mortgage on the Feenstras' family house was executed, article 2334 provided, in pertinent part:

> Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.

La.Civ.Code Ann. art. 2334 (West 1971).

This statute was amended in 1976, effective January 1, 1977, to read, in pertinent part:

> Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent.
>
> Where the title to community immovable property declared to be the family home stands in the name of the husband alone it may not be leased, mortgaged or sold without the wife's written authority or consent.
>
> The limitation on the husband described in the two immediately preceding paragraphs shall not apply where the wife has made a declaration by authentic act that her authority or consent are not required for such lease,

sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.

La.Civ.Code Ann. art. 2334 (West Supp.1979).

A new codal provision relating to alienation of community property, effective January 1, 1980, requires the concurrence of both spouses for the alienation, encumbrance, or lease of community immovables, La.Civ.Code Ann. art. 2347 (West Cum.Pamphlet 1979), although a spouse is still permitted to renounce his or her right to concur, La.Civ.Code Ann. art. 2348 (West Cum.Pamphlet 1979).

**3.** In April, 1978, the Supreme Court of Louisiana reversed a decision of the Civil District Court of the Parish of Orleans declaring articles 2404 and 2334 unconstitutional. *Corpus Christi Parish Credit Union v. Martin,* 358 So.2d 295 (La.), *cert. denied,* 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245 (1978). In reversing the Civil District Court, the Supreme Court specifically declined to rule on the constitutionality of articles 2404 and 2334. Instead, the Supreme Court held that the mortgage at issue in that case was valid on the theory that the wife could have prevented the mortgage by exercising her right under a Louisiana statute (La.Rev.Stat.Ann. § 9:2802 (West 1951)) similar to article 2334. Judges Tate, Calogero and

decision prospectively.[4] Further, we note that, effective January 1, 1980, the Louisiana Legislature has completely revised the provisions of the Louisiana Civil Code relating to matrimonial regimes and in so doing has eliminated the head and master concept altogether.[5]

## II

We address first the position asserted by the State of Louisiana to the effect that no case or controversy sufficient to permit the exercise of the judicial power of the United States by this court is presented here and that the issues raised by Mrs. Feenstra are moot.[6] The State's position appears to be based in part upon an inaccurate description of the state of the record. The State asserts that Mrs. Feenstra has dismissed her counterclaims against Mr. Kirchberg, that Mr. Kirchberg has dismissed his complaint against Mrs. Feenstra and that the only parties remaining are Mrs. Feenstra, in her capacity as a third party plaintiff, and the third party defendants, Governor Edwards and the State of Louisiana. Our review of the record indicates, to the contrary, that Mrs. Feenstra's second counterclaim, in which Mr. Kirchberg, Governor Edwards and the State of Louisiana are named as defendants, has not been dismissed and that her challenge therein (as viewed by the district court) to the constitutionality of article 2404 of the Louisiana Civil Code is

before this court on appeal from the summary judgment entered against her on her second counterclaim by the district court.

■ The State further asserts that Mrs. Feenstra no longer presents her challenge to article 2404 in the context of a specific live grievance and that Mrs. Feenstra does not indicate that she is faced with a real or immediate threat of injury. The State's position is, again, totally unsupported by the record, and at oral argument we were assured by Mrs. Feenstra's counsel that the mortgage still exists on Mrs. Feenstra's home, that the order directing the Civil Sheriff for the Parish of Orleans to seize and sell the home is still in effect and that the threat of losing her home is, accordingly, a real one. We conclude, therefore, that the controversy between Mrs. Feenstra and Mr. Kirchberg described in Mrs. Feenstra's second counterclaim is neither academic nor moot and that an actual controversy, as required by article III of the Constitution and the Federal Declaratory Judgment Act, exists here, rendering appropriate review by this court of the decision of the district court.

## III

Our analysis must begin with a consideration of the nature of the matrimonial regime under Louisiana law.

---

Dennis of the Supreme Court of Louisiana dissented. The dissenting opinion stated that the issue of the constitutionality of articles 2404 and 2334 could not, in the view of the dissenting Judges, be avoided and that the statutes "are obviously inconstitutional" as a denial of the equal protection of the laws under the fourteenth amendment.

4. *See* Part IV *infra.*

5. *See generally* La.Civ.Code Ann. arts. 2325–2376 (West Cum.Pamphlet 1979).

6. *See* U.S.Const. art. III, § 2. In *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), Chief Justice Hughes characterized the jurisdictional "case or controversy" requirement as follows:

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distin-

guished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

300 U.S. at 240–41, 57 S.Ct. at 464 (citations omitted).

Mrs. Feenstra's second counterclaim seeks a declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1976), that the challenged Louisiana statute is unconstitutional. Section 2201 limits the availability of declaratory relief to cases of "actual controversy." *Id.* § 2201.

Article 86 of the Louisiana Civil Code states that: "The law considers marriage in no other view than as a civil contract."[7] In order to enter into a marriage contract, the parties must be willing and able to contract;[8] they must freely consent;[9] and they must contract pursuant to the forms and solemnities prescribed by law.[10]

Insofar as the property of married persons is concerned, article 2334 of the Louisiana Civil Code divides such property into separate and common property. Under article 2334, common property is that which is acquired by the husband and wife during marriage in any manner different from that specified in article 2334 for the acquisition of separate property. However, under articles 2325, 2332 and 2424[11] of the Code, the parties entering into a marriage contract may, in that contract, modify, limit or entirely reject the regime established by article 2334. In the language of article 2332, "[t]he partnership, or community of aquets or gains, needs not to be stipulated; it exists by operation of law, in all cases where there is no stipulation to the contrary. But the parties may modify or limit it; they may even agree that it shall not exist."[12]

The management of property that under article 2334 is common property is given by article 2404 of the Louisiana Civil Code to the husband:

The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.

Finally, article 2334, as it existed in 1974,[13] contained a restriction on the right of the husband, under article 2404, to alienate common property without the consent and permission of the wife:

Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.

Because of the contractual nature of marriages generally under Louisiana law and because the parties to a marriage contract have the right to alter the community regime, the State of Louisiana argues that the parties to a marriage contract (such as Mr. and Mrs. Feenstra) in which no provision has been made to alter the community regime have freely and tacitly contracted *for* the community regime. The State further asserts that a wife (such as Mrs. Feenstra) who fails to file the declaration contemplated by the last paragraph of article 2334, and thereby to limit her husband's power to encumber or dispose of immovable property standing in the name of both husband and wife without her consent, has freely consented to any encumbrance or disposition of that property which he might make. These arguments convert Mrs. Feenstra's predicament from one which is statutorily imposed—and therefore within the reach of the fourteenth amendment—to one which has been freely chosen by Mrs. Feenstra—and therefore beyond the reach of the fourteenth amendment. The district court agreed:

ty arrangement and merely substitute the wife for the husband as manager of the community. Of course, if article 2404 requires that the husband be the manager of any community, whether established by operation of law or by contract, our analysis of the constitutionality of the statute would not be affected.

7. La.Civ.Code Ann. art. 86 (West 1952).

8. *Id.* art. 90.

9. *Id.* art. 91.

10. La.Civ.Code Ann. art. 2328 (West 1971).

11. *Id.* arts. 2325, 2332, 2424.

12. We have assumed in deciding this appeal that the parties to a marriage in Louisiana could contractually retain a community proper-

13. *See* note 2, *supra.*

Both article 2404 and article 2334 were provisions of the contract entered into by the Feenstras at the time of their marriage. It may have been a poor bargain on Ms. Feenstra's part, but it was one freely made and one with which she must live.

The choice of a matrimonial property system is one best made on the state level by the people who must live with the choice. The people of Louisiana have chosen to permit the parties to each marriage to select their own community property regime. It is only where the parties do not specify a particular regime that the law provides one for them. Thus, the system contained in Louisiana's Civil Code is an optional one; anyone wishing to avoid it may easily do so. Considering this, we find that nothing in the Equal Protection and Due Process Clauses of the Fourteenth Amendment requires that we nullify the matrimonial property system chosen by the people of Louisiana.

*Kirchberg v. Feenstra*, 430 F.Supp. 642, 648 (E.D.La.1977).

 While much has been said by the district court and by the State of Louisiana about Mrs. Feenstra's having made a free choice, the record contains no evidence that she did so. To the extent that any choice has been made, it has been made by the State of Louisiana. To paraphrase the district court's opinion, since Mr. and Mrs. Feenstra did not specify a particular regime, the law has provided one for them. The law—article 2404 of the Louisiana Civil Code—is an act of the State of Louisiana, not of Mrs. Feenstra. Under the fourteenth amendment, this is a fundamental difference. When the choice is made by the government, the obligation to afford all persons the equal protection of the laws arises.[14]

 Having established that a choice has been made for the Feenstras by Louisiana law, the next question for consideration is whether the nature of the choice—the designation of the husband as the manager of the community estate—is a classification by gender. It is clear that insofar as the management of the community estate is concerned, several different methods of management are possible. The community could be managed by the husband exclusively (as provided in article 2404), by the wife exclusively, by the husband and wife acting jointly, or by either the husband or wife acting concurrently.[15] The State of

14. *See Eskra v. Morton*, 524 F.2d 9, 14 (7th Cir. 1975). *Cf. Trimble v. Gordon*, 430 U.S. 762, 775 n.16, 97 S.Ct. 1459, 1467 n.16, 52 L.Ed.2d 31 (1977). We reject the argument that the matrimonial regime that governs marriages in Louisiana absent an antenuptial agreement is the free choice of the parties to a marriage. First, as was said in *Trimble*, "[w]ith respect to any individual, the argument of knowledge and approval of the state law is sheer fiction." *Id.* Second, the *Trimble* Court also expressed doubt that, at least when the disadvantaged group has been a frequent target of discrimination, a state may constitutionally place on individual members of that group the burden of overcoming a statutory presumption about their intentions or about the intentions of others directly affecting them. Louisiana, for example, presumes that couples will generally intend to give the husband virtually unlimited authority to dispose of assets belonging to both of them, and conversely that those couples will intend to deprive the wife of any legally-enforceable right to participate in those decisions. We suspect that this statutory presumption and others like it are too often based on inappropriate assumptions about the competence, the responsibility or the proper place of individual members of the group disadvantaged or "protected" by the legislative classification. Such a presumption is particularly objectionable where, as here, it is likely to function as a trap for the unwary. Finally, as we discuss in text below, even were all couples adequately informed before marriage about the statutory presumption and how to avoid it, the choice presented by the State of Louisiana is hardly an even-handed one. It is more expensive for a couple to provide the wife with some legally-enforceable right to participate in the fundamental family decisions about the disposition of community property than it is for them to leave all those decisions to the husband. The couple wishing to vest the wife with even minimal rights and responsibilities concerning property to which her claim is as great as her husband's must not only take the initiative in contractually emancipating the wife, but must also pay an economic penalty for doing so.

15. The Legislature of Louisiana has provided for concurrent management of community property in its recent revision of the law regulating matrimonial regimes. *See* note 1, *supra*.

Louisiana has chosen one—management by the husband alone—and in so doing has established a gender-based ˙classification subject to scrutiny under the fourteenth amendment. The State urges that because a couple contemplating marriage could specify some other type of arrangement in an antenuptial contract, there is no insurmountable barrier preventing a husband and wife from choosing a form of management acceptable to them and, accordingly, no state-imposed gender-based classification.[16] This analysis, however, fails to take into account the fact that Louisiana law places the burden and expense of obtaining a lawyer and preparing a non-traditional marriage contract on couples wishing to make the wife the community manager, and it does not place that burden and expense on couples wishing to make the husband the manager. That it places the same burden on couples seeking other non-traditional forms of community management, such as joint management, is irrelevant. The classification is not facially neutral but explicitly favors management by husbands and disfavors any involvement in management by wives. Because husbands can be made managers by agreement of the parties

to the marriage without transactional costs and wives cannot, the Louisiana law extends a benefit to men that is not extended to women. Article 2404 thus establishes a gender-based classification that is subject to fourteenth amendment analysis.

 The Supreme Court, in reviewing state statutes establishing gender-based classifications, has enunciated the following test: "[t]o withstand constitutional challenge . .. . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."[17] Inherent in this analysis is a balancing process by which a court weighs the state interest sought to be furthered against the character of the discrimination caused by the statutory classification. If the court concludes that the government interest is insufficient or the legislative classification is not substantially related to achieving that interest, the statute is an unconstitutional denial of equal protection under the fourteenth amendment.

 Because the district court declined to apply equal protection analysis to

---

**16.** Discrimination need not amount to an absolute prohibition to be condemned by the fourteenth amendment. What the Constitution condemns is a statute providing for different treatment of similarly situated individuals based on gender when that discrimination among individuals is not substantially related to achieving an important governmental objective. *See* note 17, *infra*. The discrimination in this case is that the State establishes a burdensome requirement for couples wishing to give the wife a legally-enforceable right to participate in the management of the community property, whereas no such burden is placed on couples wishing to vest entire managerial control in the husband. We do not see how this burden can be avoided under Louisiana law. Even if it could be avoided, we think the Supreme Court has rejected the notion that an insurmountable barrier is necessary to render a legislative classification unconstitutional. *Trimble v. Gordon*, 430 U.S. 762, 773–74, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

**17.** *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). The requirement of a substantial relationship between the classification by gender and the achievement of the important governmental objective necessarily involves an inquiry whether there are less

discriminatory methods available to the state to achieve the same objective. *See Orr v. Orr*, 440 U.S. 268, 280–281, 99 S.Ct. 1102, 1112–1113, 59 L.Ed.2d 306, 320–21 (1979).

The role of gender as a basis for legislative classifications continues to be a significant issue in our society, and the Supreme Court has been faced with the issue many times in the past nine years. *See generally Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). *Cf. Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) (exclusion of pregnancy benefits from state insurance program not gender-based classification).

article 2404 of the Louisiana Civil Code, we are unable to look to the district court's opinion for guidance on the specific governmental objective sought to be achieved by article 2404.[18] The State of Louisiana, having devoted half of its brief to the argument that there is no case or controversy here, has given us only *one sentence* on the state objective to be achieved in article 2404: "One of the two spouses has to be designated as the manager of the community." If the State means that it has a valid governmental interest in providing in its marital or community property laws for the way in which community property is managed, then that is a position with which we could scarcely disagree. However, the State must proceed to show that the method it has chosen to accomplish that governmental interest or objective, *i. e.*, the selection of the husband as the manager of the community estate in any marriage in which the parties have not made another choice, is substantially related to achieving that objective. Since article 2404 clearly discriminates against women as community managers or co-managers, the State must show why it is that article 2404 bears a closer or more substantial relationship to the objective sought to be achieved by article 2404 than would a gender-neutral method of selecting the community manager. The State has failed to make such a showing. The decision of the Louisiana Legislature to

adopt a law providing for a gender-neutral method of community management, effective January 1, 1980, while not dispositive of the issue before this court, suggests that such a showing would not be possible. Accordingly, we find that article 2404 of the Louisiana Civil Code is unconstitutional as a denial of the equal protection of the laws under the fourteenth amendment and we reverse and remand for further proceedings consistent with this opinion.[19]

## IV

We apply our decision today prospectively only, because a holding of retroactive invalidity of article 2404 would create a substantial hardship with respect to property rights and obligations within the State of Louisiana. The Supreme Court has said:

> The actual existence of a statute, prior to [a determination of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determi-

---

18. The district court relied on *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1970), for the proposition that equal protection analysis is inappropriate in an area in which a state has extensively and carefully regulated the conduct of its citizens with respect to rights and obligations that are peculiarly matters of state interest and concern. Seven years later, commenting on its deferential approach to the statute at issue in *Labine*, the Supreme Court in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) said: "Despite [the differences between the Louisiana statute at issue in *Labine* and the Illinois statute at issue here], it is apparent that we have examined the Illinois statute more critically than the Court examined the Louisiana statute in *Labine*. To the extent that our analysis in this case differs from that in *Labine* the more recent analysis controls." 430 U.S. at 776 n.17, 97 S.Ct. at 1468 n.17. When a federal court is presented with a constitutional chal-

lenge to one aspect of a complex and comprehensive structure of state legislation, its responsibility is to focus as closely as possible upon the challenged provision, with due regard for preserving the soundness of the entire structure while removing any constitutionally infirm provisions; but if it is ultimately a question of whether the state legislation or the Constitution will prevail, the state legislation must fall.

19. Although Mrs. Feenstra brought her second counterclaim as a challenge to article 2334, the relevant portion of that statute, *see* note 2, *supra*, acted only to limit the husband's rights as head and master of the community property as provided in article 2404. Our decision today with respect to article 2404, which eliminates that provision from the laws of Louisiana, renders unnecessary a decision on the limiting portion of article 2334.

nations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination.

*Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318–319, 84 L.Ed. 329 (1940). The concept of the husband as head and master of the community of gains has been a part of Louisiana law since 1808, Louisiana Civil Code of 1808, art. 66, and before that first codification of Louisiana law it was apparently part of the Spanish Civil Law effective in that region at the time of the Louisiana Purchase, *see, e. g.*, Pugh, *The Spanish Community of Gains in 1803*: Sociedad De Gananciales, 30 La.L.Rev. 1, 13 (1969). Since our decision could produce substantial inequitable results if applied retroactively, we avoid that "injustice or hardship" through a holding of nonretroactivity. *Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

REVERSED.