Bonifacia CARRASCO,
Plaintiff-Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant-Appellee.

No. 79–1148.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1980.

Decided June 11, 1980.

Jose Enrique Colon Santana, Rio Piedras, P.R., with whom, Luis Amauri Suarez Zayas, Hato Rey, P.R., and Ana Matanzo Vicens, San Juan, P.R., were on brief, for plaintiff-appellant.

Lillie Price, Atty., Baltimore, Md., with whom, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Julio Morales-Sanchez, U. S. Atty., San Juan, P.R., and Randolph W. Gaines, Chief of Litigation, Baltimore, Md., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, WISDOM, Senior Circuit Judge *, CAMPBELL, Circuit Judge.

WISDOM, Circuit Judge.

This appeal presents the question whether, in the peculiar circumstances of this case, the plaintiff-appellant, Bonaficia Carrasco, is entitled to coverage for disability under the Social Security Act, 42 U.S.C. § 401 *et seq.*, for self-employment income in Puerto Rico, a community property jurisdiction. The Secretary of Health, Education

* Of the Fifth Circuit, sitting by designation.

and Welfare (now Health and Human Resources) held that she had not overcome the statutory presumption, stated in 42 U.S.C. § 411(a)(5)(A), that in a community property jurisdiction income from a trade or business (other than one conducted by a partnership) is treated as the husband's income, unless the wife exercises substantially all of the management and control of the business. The plaintiff raises a constitutional attack on the statutory presumption as a gender classification in violation of the equal protection element of the due process clause of the fifth amendment.

The case is further complicated by the Government's mistaken assumption that the business in which the plaintiff was employed, cattle-raising, belonged to Carrasco and her husband, Margaro Acevedo Marcano, and was therefore community property. One of the judges on the panel, during the argument, noted that the cattle were the plaintiff's separate and paraphernal property which she brought into the marriage. She had lived in concubinage with Acevedo for some 20 years before the two were married. Carrasco managed her small cattle-raising business until she became mentally incompetent. Acevedo then took over the care of the herd. The Secretary credited the plaintiff with 19 of the necessary 20 quarters for coverage. She would have been entitled to full coverage if, after her incompetency, the relations between Carrasco and Acevedo with respect to their cattle raising constituted a partnership within the meaning of the Social Security Act—either an implied partnership during their concubinage or a partnership by operation of law after marriage. Because the partnership issue had not been briefed, the Court directed the parties to file supplemental briefs.

Although the briefs have been filed, there are of course no findings of fact and conclusions of law relative to the partnership issue. Accordingly, we vacate the judgment and remand the case to the Secretary for proceedings consistent with this opinion.

## I.

The hearing before the administrative law judge was short; the plaintiff was obviously mentally incapable of testifying; her husband was not clear as to the date of their marriage and he cast little light on the management of their small cattle business. As well as we can discern them, these are the relevant facts.

In May 1974 Carrasco applied to the Secretary of Health, Education and Welfare for social security disability benefits, alleging that she had been disabled since 1971. These benefits are allowable under 42 U.S.C. § 423(c)(1)(B)(i) to an applicant over 31 years who has had 20 calendar quarters of coverage (self-employment) during the 40 quarters preceding the applicant's disability. Because she managed and controlled the business until she was disabled, the Secretary credited her with 19 quarters, i. e., through the first quarter in 1971.

The plaintiff contends that in 1973, 1974, and 1975 she earned, respectively, $700, $800, and $400 from the sale of her livestock and paid a self-employment tax during those years. Twenty years before, when she first began living with Acevedo, she had four head of cattle. The record does not show the date of marriage, but her husband testified that it was "two or three years" before the administrative hearing on November 6, 1976. That would suggest a date some time in 1973 or 1974. According to her husband, his wife became mentally incompetent about five years before the hearing, as a result of having been struck by one of the cattle. This would place the onset of the plaintiff's incompetency at some time in 1971. There is nothing in the record, however, to show whether the incompetency came about suddenly or was the result of a progressive deterioration of her mind. No doctor testified. Apparently there was an interval between the accident and her husband's taking over her duties. It is undisputed that she had cared for the herd and managed the small business until one day when Acevedo saw her struggling with one of the cattle and thereafter, so he testified, "I would not let her do a thing."

## II.

The Secretary has given Carrasco credit for 19 quarters, through the beginning of her illness. Carrasco contends that she should be given credit for additional quarters after she became ill. The period after her disability can be divided into two parts: before her marriage and after her marriage.

### A.

Carrasco and Acevedo married in 1973 or 1974. Before the wedding the cattle of course were Carrasco's separate and paraphernal property. The able district judge in this case, however, pointed out that "due to the long extramarital relationship between the two it is quite plausible that as to this livestock plaintiff's husband had [a] vested community property interest." In support of this statement, he cited *Caratballo Ramirez v. Acosta*, 104 D.P.R. 474 (1974), and *Cruz v. Succession of Laundrau Diaz*, 97 D.P.R. 563 (1969). We tend to defer to the district judges in Puerto Rico on matters of Puerto Rican law. The cases cited, however, are not applicable because they involved the *termination* of the community and a claim by one spouse against the community. Such a claim, arising from an extra-marital relationship, is based on unjust enrichment or on services rendered in the absence of an express or implied agreement.[1]

■ The record is unclear about how the cattle were managed before the marriage. Perhaps on remand the claimant will be able to show, at least from her disability in 1971 until her marriage, that there was an agreement or understanding that Acevedo would furnish management and labor and Carrasco the capital in a sharing arrangement that should be treated as a partnership. It is not improbable that in the early stages of her illness Carrasco and Acevedo had such an express understanding. Carrasco alluded to the existence of some sort of agreement during the course of the administrative law judge hearing. When Acevedo testified that he did all the work, she protested, "Yes, but the cattle is mine." As the district court observed, however, "[t]he record neither refers to or elaborates on [the partnership issue] nor is it argued by the parties on review." If they had a partnership and if it qualifies as a partnership under the Social Security Act, then Carrasco would be eligible for credit for additional quarters of coverage, assuming of course that the partnership had income during this period. There is nothing in the record to show if there were any earnings from the business in 1971 or 1972 before the marriage.

### B.

■ In his original brief, the Secretary stated: "Under the concept of community, plaintiff and her husband are co-owners of the property." Appellee's brief at 8. This is a misstatement of Puerto Rican law. At the time of the marriage the cattle were Carrasco's separate and paraphernal property. "Separate property of the spouse's" is "[t]hat brought to the marriage as his or her own." Civil Code, 1930, § 1299; P.R. Laws Ann. tit. 31, § 3631. After the marriage, the cattle continued to belong to the wife. Only on termination of the marriage would there arise a question as to a claim the husband or the community estate might have against the wife's separate property. The Civil Code of Puerto Rico has a specific provision covering increment to a herd of cattle. "Whenever the property belonging to the husband or to the wife should consist, in whole or in part, of cattle existing at the time of the dissolution of the [conjugal]

---

1. "[In such a case] aside from the express agreement proved by the very statements of the decedent plaintiff has a right to prove said agreement or her right to a particular share in the property, in any of the following ways: (1) as an express agreement if it can be proved through the testimony of private persons alien to the concubinary relationship; (2) as an implied agreement spontaneously arising from the human and economic relationship between the parties during concubinage; (3) as an act of justice to prevent the unjust enrichment, recognizing the value of the property, assets or services contributed by the plaintiff and their corresponding profits." *Danz v. Suau*, 82 D.P.R. 591 (1961) (citations omitted).

partnership, the heads of cattle exceeding the number which were brought to the marriage, shall be considered as partnership property." Civil Code, 1930, § 1305; P.R. Laws Ann. tit. 31, § 3645. But, here the marriage was not terminated. The cattle, therefore, remained in the separate estate of the wife; she, in case of divorce, or her separate estate, in case of her death, would owe the increment to the community.[2] This is a basic principle of civil law that goes back to *Las Siete Partidas.*

Although the cattle themselves remained Carrasco's separate property after the marriage, the earnings generated by the cattle business fell into the conjugal partnership. "To the conjugal partnership belong: . . The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." Civil Code, 1930, § 1301; P.R.Laws Ann. tit. 31, § 3641. Any money gained from the sale of the cattle was community income. As such, the government contends, it falls within the following presumption:

> If any of the income derived from a trade or business (other than trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife.

42 U.S.C. § 411(a)(5)(A).

The obvious purpose of the presumption, enacted in 1950, was to put taxpayers/earners in community property states in the same position as taxpayers/earners in non-community property states: the wage earner is usually the man and therefore should be credited with self-employment wages. Where the wife exercises substantially all of the management and control of a business, she can rebut the presumption and the gross income and deductions are treated as hers. The section followed on the heels of the 1948 Internal Revenue Act compromising the tax war between the states: between the community property states on the one hand and, on the other hand, non-community property states aided by the Treasury Department. But what was a rational rule of thumb in 1948–50 constitutes gender discrimination and is therefore unacceptable in 1980: The plain effect of the section is to favor the husband by giving him the benefit of a statutory presumption crediting him with all of the community income from a trade or business; the wife is ineligible for benefits unless she can prove that she "exercises substantially all of the management and control of such trade or business".

In 1976 the Supreme Court adopted a new standard for judging gender classifications alleged to violate the equal protection guarantee of the fifth and fourteenth amendments: "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407. *See generally* L. Tribe, American Constitutional Law §§ 16–24 to 16–28 (1978); Ginsburg, *Sex Equality and the Constitution,* 52 Tul.L.Rev. 451 (1978).[3]

---

**2.** When Carrasco married she owned four head of cattle. Her husband testified at the hearing before the administrative law judge that they had six cattle at that time.

**3.** The government's brief states that the statute should be judged by the traditional rational basis standard, the lower tier of the old two levels of equal protection scrutiny. *See* Gunther, *The Supreme Court 1971 Term—Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1, 8 (1972). This ignores the last five years of gender discrimination case law, beginning with *Craig.* Such a statement is surprising, given that the federal government in general, and the Department of Health, Education and Welfare in particular, has been involved in many of these cases. *See, e. g., Califano v. Westcott,* 1979, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382; *Califano v. Web-*

Several times during the past decade the Court has considered whether the eligibility (coverage) provisions of the Social Security Act violate the equal protection guarantee.[4] *Weinberger v. Wiesenfeld*, 1975, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, involved the validity of a Social Security provision allowing benefits to be paid to the widow of a deceased husband who had earnings but not to the widower of a deceased wife who had earnings. The Court invalidated the provision, calling it an " 'archaic and overbroad' generalization . . . 'not . . tolerated under the Constitution' . . .," namely, that male workers' earnings are vital to support of their families, while the earnings of female wage earners do not significantly contribute to their families' support". *Id.* at 643, 95 S.Ct. at 1231.[5] *Califano v. Goldfarb*, 1977, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270, concerned the constitutionality of a Social Security provision granting survivors' benefits to a widow automatically based on the earnings of a deceased husband, but granting benefits to a widower only if he received at least one-half of his support from the deceased wife. Calling the equal protection question posed "indistinguishable" from that decided in *Weinberger*, the Court struck down the provision. The statute enacted a presumption that a wife is usually dependent on her husband's income. That same term the Court upheld a provision establishing a Social Security benefit calculation formula designed to compensate women because of past discrimination. *Califano v. Webster*, 1977, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360. Last year the Court held unconstitutional a Social Security provision that

awarded benefits to families whose dependent children were deprived of parental support because of the father's unemployment, but did not award benefits when the mother became unemployed. *Califano v. Wescott*, 1979, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382.

The statute here, like that involved in *Califano v. Wescott*, is "part of the 'baggage of sexual stereotypes,' . . . that presumes the father has the primary responsibility to provide a home and its essentials, '. . . While the mother is the center of the home and family life' ". 443 U.S. at 89, 99 S.Ct. at 2663, 61 L.Ed.2d at 393. As the Court concluded in that case, "[l]egislation that rests on such presumptions, without more, cannot survive scrutiny under the Due Process Clause of the Fifth Amendment." *Id.*

The Secretary advances several arguments why the disability provision should be upheld. First, he states that Congress found it reasonable to assume that a husband would manage and control a community business because state community property laws prevalent when the benefit provision was enacted vested in the husband the right to manage and control a business owned by both spouses. The U.S. Court of Appeals for the Fifth Circuit recently held that the Louisiana provision designating the husband as the "head and master" ("administrator" or managing partner) of the community violates the equal protection guarantee because it constitutes impermissible gender discrimination. *Kirchberg v. Feenstra*, 609 F.2d 727 (5th Cir. 1979), *cert. granted,* 446 U.S. 917, 100 S.Ct. 1849, 64

---

ster, 1977, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360; *Califano v. Goldfarb*, 1977, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270.

4. For a prophetic discussion of the gender discrimination problems raised by provisions of the Social Security Act, see Note, *Sex Classifications in the Social Security Benefit Structure*, 49 Ind.L.J. 181 (1973).

5. Because the fifth amendment contains no equal protection guarantee, in *Weinberger*, as well as in subsequent cases involving gender-based federal laws, the Court applied the due process clause of that amendment. "[W]hile

the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process'." *Schneider v. Rusk*, 1964, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218, 222 (citing *Bolling v. Sharpe*, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, 886). "This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. at 638 n. 2, 95 S.Ct. at 1228 n. 2.

L.Ed.2d 270 (1980).[6] Therefore, if anything, the Secretary's argument works against him: If a gender-based statute has been found to violate equal protection, any gender-based statute grounded on it is, at the least, suspect. Second, the Secretary tells us that the provision is based on an Internal Revenue statute which presumes that community income derived from a trade or business owned by both spouses should "be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control" of the business. 26 U.S.C. § 1402(a)(5).[7] The husband is liable for federal taxes, including the self-employment income tax, owed because of the income. Harmony between the Internal Revenue Code and the Social Security Act is a worthy goal, but there are other ways to achieve it than to relegate wives to an inferior position vis-a-vis their husbands. Whether the *income tax* provision is unconstitutional is a question we do not reach; nevertheless, it does not give us any good reason for concluding that the *benefit* statute does not violate the fifth amendment. Third, he argues that Congress enacted this section, among others, *see, e. g.,* 42 U.S.C. § 410(a)(3)(A), because it feared the potential fraud inherent in family businesses. It wanted to ensure that only an individual who actually earned wages or engaged in self-employed activity is credited with coverage under the Act. This objective is not advanced by a presumption that husbands work and wives do not. Indeed, the statute ignores a wife who does some of the work in a community income activity. Unlike a partner in a partnership, *see* 42 U.S.C. § 411(a), a wife must prove that she does "substantially *all* " of the work to receive benefits. Finally, the Secretary points out that spouses can avoid operation of this section by forming a partnership. The existence of a method to circumvent a gender-based statute does not make it any less unconstitutional. Spouses should not be required to go to the trouble and expense of avoiding a statute that violates the principle of equal protection.

The district court held that the provision did not constitute gender discrimination, citing *Weinberger v. Salfi,* 1975, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *Mathews v. DeCastro,* 1976, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389; and *Califano v. Jobst,* 1977, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228. Its reliance on these cases is misplaced; none of them concerned a disparity in treatment of men and women. In *Salfi,* the court upheld a duration-of-relationship Social Security eligibility requirement which excluded from benefits a surviving wife or stepchild who had been related to a deceased wage earner for less than nine months prior to his death. The provision was enacted to prevent "sham marriages" entered into so that a spouse could claim benefits upon the anticipated early death of the wage earner.

**6.** "The community could be managed by the husband exclusively . . ., by the wife exclusively, by the husband and wife acting jointly, or by either the husband or wife acting concurrently. The State of Loiuisiana has chosen one—management by the husband alone—and in so doing has established a gender-based classification subject to scrutiny under the fourteenth amendment. . . . The classification is not facially neutral but explicitly favors management by husbands and disfavors any involvement in management by wives." *Kirchberg v. Feenstra,* 609 F.2d at 733–34.

**7.** Section 1402(a)(5) provides:
(5) if—
(A) any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife; and
(B) any portion of a partner's distributive share of the ordinary income or loss from a trade or business carried on by a partnership is community income or loss under the community property laws applicable to such share, all of such distributive share shall be included in computing the net earnings from self-employment of such partner, and no part of such share shall be taken into account in computing the net earnings from self-employment of the spouse of such partner . . . ..

*DeCastro* involved a Social Security provision which distinguished between married and divorced women. The provision upheld in *Jobst* terminated secondary benefits received by a disabled dependent child of a wage earner if the child married a person who was ineligible for benefits under the Act, but did not terminate benefits if the spouse was receiving benefits.

The district court also stated that the community property provision did not constitute an irrebuttable presumption. The presumption, however, cannot be rebutted unless the wife can prove that she exercised substantially all of the control and management of a community business. A wife who exercises some or a large degree of control and management cannot overcome the presumption and will not be credited with any of the income.[8] Moreover, the provision is unconstitutional even as to cases where it can be rebutted. It nevertheless discriminates between the sexes, placing on a wife the burden of proving that she does substantially all of the work in a community business.

### III.

For the reasons we have given, we hold that the Social Security community income provision, 42 U.S.C. § 411(a)(5)(A), violates the due process clause of the fifth amendment and is therefore unconstitutional. That does not dispose of this case. We must decide whether in the absence of the presumption Carrasco is eligible for further quarters of coverage under the Act.

Spouses in Puerto Rico form a conjugal partnership. Whether such a partnership qualifies as a partnership within the meaning of the Social Security Act is unclear. The Act states that the terms "partnership" and "partner" as used in the Act have the same meaning as when used in supplement F of Chapter 1 of Title 26, Internal Revenue Code of 1939. 42 U.S.C. § 411(d). That section was repealed by the 1954 Internal Revenue Act. *See* 26 U.S.C. § 7851. Apparently the operative statute is now § 761(a) of the Internal Revenue Code, which defines "partnership":

> (a) Partnership.—For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. Under regulations the Secretary or his delegate may, at the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of this subchapter, if it is availed of
>
> (1) for investment purposes only and not for the active conduct of a business, or
>
> (2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted,
>
> if the income of the members of the organization may be adequately determined without the computation of partnership taxable income.

26 U.S.C. § 761(a).

Under the laws of some community property jurisdictions, "[t]he community is not a partnership, nor may it be said that the community is a partner with other members of, or with, a corporation in which one member of the community owns stock in his separate right", *Beals v. Fontenot*, 111 F.2d 956, 959 (5th Cir. 1940). In Puerto Rico, however, "[t]he conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of this chapter [Ch. 273 Conjugal Partnership]". Civil Code, 1930,

---

8. The district court stated that spouses could share in benefits if they both actually participated in the work, citing *Rasmussen v. Gardner*, 374 F.2d 589 (10th Cir. 1967). There is no indication in that case that the property involved was community property. Had it been community property, the community property provision, § 411(a)(5)(A), would govern. The husband would be credited with all of the income derived from the business unless the wife could demonstrate that she exercised substantially all of the management and control of the business. If she could do so, she would receive credit for all of the income.

§ 1298; P.R.Laws Ann. tit. 31, § 3624. Accordingly, it may qualify as a partnership under the Act and Carrasco may deserve further quarters of coverage.

At the time of Carrasco's claim Puerto Rico conjugal partnership probably was not equivalent to a usual partnership because the Civil Code decreed that the husband was the "administrator" of the conjugal partnership. *See* Civil Code 1930, § 1312; P.R.Laws Ann. tit. 31, § 3671. As noted, the Fifth Circuit has held a comparable provision in the Louisiana Civil Code unconstitutional. See *Kirchberg v. Feenstra,* 609 F.2d 727 (5th Cir. 1979), *cert. granted,* 446 U.S. 917, 100 S.Ct. 1849, 64 L.Ed.2d 270 (1980). The Puerto Rico provision has since been repealed. *See* Act, May 1, 1976, No. 51, p. 134, § 2, eff. May 21, 1976.

The government contends that whether the spouses can be treated as partners for Social Security Act purposes and the determination of the proper characterization of community income in the absence of the § 411(a)(5)(A) community income presumption necessitates further factfinding, and that such factual development is the responsibility of the Secretary. *See* 42 U.S.C. § 405; *Gonzalez v. Richardson,* 455 F.2d 953, 954 (1st Cir. 1972); *Gardner v. Bishop,* 362 F.2d 917, 919 (10th Cir. 1966). We agree. Considering the insufficient facts before us and the important policy questions inherent both in determining the proper treatment of community income and carrying out the objectives of the Act,[9] we suggest, with deference, that the Secretary should formulate a new plan for crediting community income for disability benefits purposes under the Act.

### IV.

In the interest of justice as well as the interest of proper administration of the Act in a community property jurisdiction, we remand this case to the Secretary for further factual development and for determination of the proper treatment for commu-

nity income. On remand the precise date of Carrasco's wedding should be determined. At the hearing before the administrative law judge Acevedo remembered only that it took place some time in 1973 or 1974. Carrasco now has 19 quarters of coverage, one short of the number necessary for her to receive benefits. Further development of the facts may show that she continued to work after her illness began and is therefore entitled to additional quarters of coverage during the period before her marriage. Or perhaps counsel for Carrasco will be able to develop facts showing that during the early stages of her illness she entered into an agreement with Acevedo for a sharing arrangement equivalent to a partnership. She may even be entitled to half of the earnings after the marriage under a prior partnership agreement that was still in effect or effective by operation of law governing the conjugal partnership in Puerto Rico. On the other hand, perhaps she will not be entitled to coverage after her marriage under any method of community income apportionment devised by the Secretary to replace § 411(a)(5)(A). We leave resolution of these matters to the Secretary, while of course reserving to Carrasco the option of seeking judicial review of his decision.

We VACATE the judgment of the district court and REMAND this case to the Secretary for proceedings consistent with this opinion.

---

9. For example, the Act is "basically a statutory insurance policy". *Weinberger v. Salfi,* 422 U.S. at 752, 95 S.Ct. at 2460.