Esther AYUSO–MORALES,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,
Appellee.

No. 81–1357.

United States Court of Appeals,
First Circuit.

Submitted Nov. 6, 1981.

Decided March 30, 1982.

Vicente Perez Diaz, San Juan, P. R., on brief for plaintiff, appellant.

Raymond L. Acosta, U. S. Atty., San Juan, P. R., and Tamar K. Klein, Asst. Regional Atty., Dept. of Health and Human Services, Brooklyn, N. Y., on brief for defendant, appellee.

Before COFFIN, Chief Judge, and CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellant Esther Ayuso Morales sought Social Security disability benefits based upon her status as the "widow" of the insured employee Honorio Montanez Figueroa. Under 42 U.S.C. § 416(c)[1] to qualify as a "widow" a woman must have been married for at least nine months at the time of her husband's death. Appellant's marriage took place within the nine-month period. Benefits were denied.

On appeal, she urges that she is nonetheless eligible because she cohabited with her husband for twenty years prior to their marriage. She argues that cohabitation transformed her relationship into a legal marriage well before the nine-month period. She adds that, in any event, under 42 U.S.C. § 416(h)(1)(A) an applicant is a widow if she would, "under the laws . . . [of Puerto Rico] determining the devolution of intestate personal property, have the same status . . . as a wife . . . [or] widow. . . ." See generally, Rombauer, Marital Status and Eligibility for Federal Statutory Income Benefits: A Historical Survey, 52

---

[1] "The term 'widow' . . . means the surviving wife of an individual, but only if . . . she was married to him for a period of not less than nine months immediately prior to the day on which he died. . . ."

Wash.L.Rev. 227, 257 *et seq.* (1977). She claims that the concubinage law of Puerto Rico gives her such status.

■ We cannot accept appellant's first argument. We realize that some common law jurisdictions recognize non-ceremonial or "common law marriages." These marriages are created by the consent of the parties as any other contract. F. W. Kuchlar, *Law of Engagement and Marriage* 1–5 (2d ed. 1978); *see* O. E. Koegel, *Common Law Marriage and its Development in the United States* (1922). But common law marriages are not recognized in Puerto Rico. The requisites of a valid marriage in Puerto Rico are set forth in Article 69 of the Civil Code, 31 L.P.R.A. § 231.[2] Included among these requisites is the "[a]uthorization and celebration of a matrimonial contract according to the forms and solemnities prescribed by law." In the absence of these forms and solemnities, there can be no marriage. *Rivera v. District Court of San Juan*, 58 P.R.R. 352, 354 (1941); Vazquez Bote, *Notas sobre el matrimonio en derecho puertoriqueno*, 49–56 Rev.P.R. 491, 493–94, 510–12 (1973–75). E. Lalaguna Dominguez, *Estudios de derecho matrimonial* 244–45 (1962).

It is clear that the requirements of Article 69 were not met nine months before appellant husband's death. And it is equally clear that Article 69 does not contemplate exceptions. In fact, when the Puerto Rico Legislative Assembly once sought to recognize some common-law type marriages, it felt it had to enact a special law for that purpose. That law, the Act of March 12, 1903, defined "natural marriage" and established a procedure to legitimize and register such unions.[3] Acts and Resolu-

tions of the First Session of the Second Legislative Assembly 116–118 (1903). But it was short-lived. The law of 1903 was repealed on March 7, 1906. Acts and Resolutions of the Second Session of the Third Legislative Assembly 106 (1906). And no other similar statute has been enacted in the Commonwealth since then. Consequently, we believe the Commonwealth courts would conclude that appellant was not legally married to Mr. Montanez Figueroa, the deceased employee, nine months before his death.

■ We turn next to appellant's second argument—that under the law of Puerto Rico she, as a "concubine," has the status of a widow for purposes of disposition of intestate property. She asserts that she lived together with the insured employee "for more than twenty years as husband and wife." And, this fact, she claims, is sufficient.

We do not doubt that appellant has asserted sufficient facts to invoke the civil law relationship of "concubinage *more uxorio.*" That relationship exists when a man and a woman lead a common life together permanently, as in an ordinary marriage—when only the formalities of marriage are missing. *See* Puig Pena, *Las uniones maritales de hecho*, 33 Revista de Derecho Privado 1086–89 (1949). Nor do we doubt that, after a long period of hostility to this relationship stemming from the Council of Trent (1545–63), *see* Munoz Morales, *El concubinato en Puerto Rico*, 17 Rev.Jur.U.P.R. 160, 164 (1947); Puig Pena, *op. cit.* at 1090–91, n.13 (bis), the Hispanic and other civil law systems have treated this relationship with increasing liberality. Both in Europe

---

**2.** "The requisites for the validity of a marriage are:

  1. The legal capacity of the contracting parties.

  2. Their consent.

  3. Authorization and celebration of a matrimonial contract according to the forms and solemnities prescribed by law."

**3.** Section 1 of the Act provided:

  *Section 1.*—That whenever a man and a woman publicly live together in the same domicil after the manner of husband and wife

and a child shall be born to them as a result thereof, such union, if the parties thereto have the legal requisites and capacity to contract marriage and if no lawful impediment exists, shall for all purposes be held and deemed to be a lawful marriage having all the civil effects of any other lawful marriage; and any subsequent marriage by either of the parties to such union shall be bigamous and shall be punishable as such in accordance with the provisions of the penal code.

and in Latin America provisions have been enacted to remove some of the severe inequities previously suffered. *See* Puig Pena, *op. cit.* at 1092–93; Munoz Morales, *op. cit.* at 165–72; Note, *Analisis para una legislacion del concubinato* more uxorio *en Puerto Rico,* 49 Rev.Jur.U.P.R. 317, 319–27 (1980); Arraras, *Concubinage in Latin America,* 3 J.Fam.L. 330, 334 *et seq.* (1963). Thus, for example, Puerto Rico's Workmen's Accident Compensation Act specifically allows a "concubine" to receive certain benefits. 11 L.P.R.A. § 3 ¶ 5(2). *See Ortega v. Industrial Commission of Puerto Rico,* 73 P.R.R. 184 (1952); *Calderon v. Industrial Commission of Puerto Rico,* 64 P.R.R. 702 (1945). Its auto accident compensation law (Automobile Accident Social Protection Act) makes her eligible for other benefits. 9 L.P.R.A. § 2052(3). Her family may well be as eligible for public housing as if it were legally constituted through marriage. 17 R.R.P.R. § 22a–9(a)(1) (1971). The law governing social security for chauffeurs provides death benefits for "concubines." 29 L.P.R.A. § 687. And, in 1947, the Supreme Court of Puerto Rico, reversing an earlier decision, guaranteed a "concubine" rights in the property *acquired during "concubinage."* *Torres v. Roldan,* 67 P.R.R. 342 (1947), overruling *Morales v. Cruz Velez,* 34 P.R.R. 796 (1926). Given the increasing legal recognition of the "concubinage" relation, we suspect there is no important policy reason for depriving the appellant of a widow's federal social security benefits.

Nonetheless, we do not believe that appellant can qualify under 42 U.S.C. § 416(h)(1)(A), for Puerto Rico's law does not treat a "concubine" like a "widow" for purposes of "determining the devolution of intestate personal property." A "concubine" is now entitled to a share of all property acquired during the concubinage, *Torres v. Roldan,* 67 P.R.R. at 345–46. But, those rights flow from ordinary principles of *property and equity,* not of *inheritance.* That is to say, a concubine's rights over the property acquired during the concubinage can be established by proving that such property was acquired following "(1) an express" or "(2) an implied agreement" among the partners or (3) as a way "to prevent an unjust enrichment" of one of the parties. *Danz v. Suau,* 82 P.R.R. 591, 598–99 (1961); *Cruz v. Heirs of Landrau Diaz,* 97 P.R.R. 563, 570–71 (1969); *Caraballo Ramirez v. Acosta,* 104 P.R.R. 474, 480–81 (1975). *See Carrasco v. Secretary of Health, Education and Welfare,* 628 F.2d 624, 626 n.1 (1st Cir.), *reh. denied,* 638 F.2d 1 (1980). Her rights are typical of those governing property relationships among partners, *see, e.g.,* Civil Code, Art. 1580, 31 L.P.R.A. § 4351, or among "co-owners," Civil Code, Arts. 326 *et seq.,* 31 L.P.R.A. §§ 1271 *et seq.* Similar rules of property also account for the fact that a widow ordinarily obtains a half interest in the property acquired during marriage. Civil Code, Arts. 1295 *et seq.,* 31 L.P.R.A. §§ 3621 *et seq.*

The *inheritance* rights of a widow, however, concern the *other* portion of the property acquired during marriage; in fact they concern all that property that under the law of property belongs not to her, but to the deceased. A widow inherits a life estate in that property, Civil Code, Art. 761, 31 L.P.R.A. § 2411, or, inherits an absolute title if the deceased spouse left no descendants, ascendants or collaterals up to the fourth degree, Civil Code, Arts. 903–9, 31 L.P.R.A. §§ 2671–7. The "concubine," however, inherits nothing. She has no such interest in her partner's estate. In order to be a spouse entitled to an interest in the deceased spouse's property (including the deceased spouse's half of the property acquired during marriage)

"*there must exist a valid marriage producing civil effects*" (emphasis in the original).

*Ex parte Tormes,* 53 P.R.R. 396, 399 (1938) (*quoting* J. Ma. Manresa y Navarro, *Comentarios al Codigo civil espanol,* vol. 6, 501). The "concubinage *more uxorio*" is clearly excluded. *See Sanabria v. Secretary of Health, Education and Welfare,* 390 F.Supp. 538 (D.P.R.), *aff'd,* 530 F.2d 961 (1st Cir. 1976); Barbosa de Rosario, *Consideraciones en torno al concubinato, las comunas y el derecho de familia,* 42 Rev.Jur.U.P.R. 345, 360–63, 367 (1973).

This difference in treatment for purposes of property devolution is significant enough to deprive appellant of the benefits of 42 U.S.C. § 416(h)(1)(A), for to treat a concubine as a civil law partner or "co-owner" is not to treat her as a widow, under Puerto Rico's laws "determining the devolution of intestate personal property." 42 U.S.C. § 416(h)(1)(A). Nor can the fact that appellant was a widow at death bring her back within that section, for nine months of lawful marriage are required. Her constitutional "equal protection" attack on the nine-month requirement is invalid under *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and *Matthews v. De Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) which upheld similar distinctions. Thus, we cannot, under the social security statutes, allow recovery.

*Affirmed.*