# HECKLER, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* EDWARDS

No. 82–874.   Argued November 30, 1983—Decided March 21, 1984

MARSHALL, J., delivered the opinion for a unanimous Court.

*John H. Garvey* argued the cause for petitioner. On the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, Edwin S. Kneedler,* and *Frank A. Rosenfeld.*

*Neal S. Dudovitz* argued the cause for respondent. With him on the brief was *Eileen Sweeney*.

JUSTICE MARSHALL delivered the opinion of the Court.

This case raises an issue concerning this Court's mandatory jurisdiction. Federal courts of appeals have jurisdiction over appeals from all final decisions of district courts, "except where a direct review may be had in the Supreme Court." 28 U. S. C. § 1291. Section 1252 of Title 28 provides for such a direct appeal from a United States court's judgment, in a civil proceeding to which the Government is a party, holding that an Act of Congress is unconstitutional. The issue before us is whether the Court of Appeals properly dismissed for lack of jurisdiction the Secretary of Health and Human Services' appeal from a proceeding in which a federal statute was declared unconstitutional, but in which the Secretary challenged only the District Court's remedy.

I

Respondent filed this suit against the Secretary of Health and Human Services in the United States District Court for the Northern District of California in October 1980. On behalf of a nationwide class of Social Security applicants and recipients, respondent challenged the constitutionality of § 211(a)(5)(A) of the Social Security Act, 64 Stat. 502, as amended, 42 U. S. C. § 411(a)(5)(A), which established a gender-based presumption concerning the allocation of income from family businesses in community property States.[1]

---

[1] The District Court certified a class of "[a]ll applicants for or recipients of Old Age, Survivors and Disability Insurance benefits, 42 U. S. C. § 401 *et seq.*, on their own accounts as wage earners whose applications have been denied or for whom the monthly benefit amount has been reduced due to the omission from their earnings records of income earned while married and operating a trade or business in a community property state, as required by 42 U. S. C. § 411(a)(5)(A)." *Edwards* v. *Schweiker*, No. C–80–3959 (ND Cal., May 22, 1981). The class was further limited to mem-

In pretrial proceedings, the Secretary argued that the constitutional ruling sought by the class was unnecessary because the Secretary acquiesced in judicial precedents holding the challenged provision unconstitutional.[2]   Indeed, shortly after respondent's complaint was filed, the Attorney General formally notified Congress that the Executive would not defend the constitutionality of the section.[3]   The District Court

---

bers who received a final decision from the Secretary within the 60 days prior to the filing of the lawsuit or at any time thereafter.   *Edwards* v. *Schweiker*, No. C–80–3959 (ND Cal., Mar. 19, 1982).

[2] In the latter half of 1980, several courts held that the statutory presumption violated the equal protection element of the Due Process Clause. *Hester* v. *Harris*, 631 F. 2d 53, 55–56 (CA5 1980); *Carrasco* v. *Secretary of Health, Education and Welfare*, 628 F. 2d 624, 627–631 (CA1 1980); *Becker* v. *Harris*, 493 F. Supp. 991, 994–996 (ED Cal. 1980).   These courts remanded to the Secretary to formulate new standards for crediting self-employment income in community property States.   631 F. 2d, at 56–57; 628 F. 2d, at 631; 493 F. Supp., at 997.

Although the Secretary had argued that § 211(a)(5)(A) is merely an eligibility requirement, not a constitutionally suspect classification based on gender, the Solicitor General later concluded that the statutory presumption could not be defended under the standards announced by this Court in *Califano* v. *Westcott*, 443 U. S. 76 (1979) (provision that rests on stereotypical gender presumptions, without more, violates due process), and *Califano* v. *Goldfarb*, 430 U. S. 199 (1977) (classification by gender must serve and be substantially related to important governmental objectives).

[3] Executive Communication 4772, 126 Cong. Rec. 29377 (1980) (notice that Solicitor General would not take an appeal from the District Court's holding in *Becker* v. *Harris, supra*); Executive Communication 5587, 126 Cong. Rec. 29295 (1980) (same).   Congress has required the Attorney General to notify both Houses of Congress in any case in which the Attorney General considers an enacted law, at issue in the case, to be unconstitutional.   See note following 28 U. S. C. § 519 (1982 ed.).

In July 1981, the agency's concession that § 211(a)(5)(A) of the Act is unconstitutional was published as Social Security Ruling 81–17c (C. E. 1981) (acquiescing in *Becker* v. *Harris, supra*).   "Once published, a ruling is binding on all components of the Social Security Administration in accordance with [20 CFR pt. 422].   Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same.   A ruling may be

nevertheless rejected the Secretary's claim of mootness, and granted respondent's motion for summary judgment.[4] According to the court, although the Secretary "essentially conceded the unconstitutionality of § 411(a)(5)(A)," a ruling on the merits was necessary because the Department was still applying the challenged statutory section.[5]

Having held the statute unconstitutional, the District Court turned to the issue of relief. The unconstitutional provision had provided that all gross income and deductions derived from a nonpartnership trade or business in community property jurisdictions should be attributed to the husband unless the wife could establish that she exercised substantially all of the management and control of the business, in which case all income would be treated as the wife's. Having struck down this gender-based presumption, the court found the respondent class entitled to an allocation of coproprietor income between the spouses' earnings accounts on the basis of the relative amount of labor contributed by each. Finding that retroactive application of its holding was appropriate under the tests of *Chevron Oil Co.* v. *Huson*, 404 U. S. 97, 106–107 (1971), the court found that class members "are entitled to a recomputation of their earnings records, extending back to the beginning of Social Security if necessary." *Edwards* v. *Schweiker*, No. C–80–3959 (ND Cal., Jan. 22, 1982). The court entered judgment March 23, 1982.

---

superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." Social Security Rulings iii (C. E. 1981).

Neither Congress nor the agency had modified the statute or implementing regulations at the time this case was argued.

[4] *Edwards* v. *Schweiker*, No. C–80–3959 (ND Cal., May 22, 1981). Petitioner did not file an appeal challenging the ruling that the statute was unconstitutional. The jurisdictional statute at issue in this case permits, but does not require, an interlocutory appeal from a holding of unconstitutionality. 28 U. S. C. § 1252; see *United States* v. *Clark*, 445 U. S. 23, 26–27, n. 2 (1980) (Government need not appeal before final judgment is entered).

[5] *Edwards* v. *Schweiker*, No. C–80–3959, p. 2, n. 2 (ND Cal., Jan. 22, 1982) (referring to order of May 22, 1981).

The following week the Secretary filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit.[6] In the Secretary's docketing statement, filed on May 5, 1982, the Secretary listed only matters concerning the remedy ordered by the District Court, noting that the Government conceded the unconstitutionality of the statute.[7] Respondent filed a motion to dismiss the Secretary's appeal, contending that the Court of Appeals did not have jurisdiction under 28 U. S. C. § 1291 "where a direct review may be had in the Supreme Court." Respondent argued that the Secretary had such a right to direct review to the Supreme Court under 28 U. S. C. § 1252, because the District Court had held a statute unconstitutional in a civil action to which a United States officer was a party. In a one-sentence order dated July 27,

---

[6] The notice of appeal from the judgment of March 23, 1982, does not state the ground of appeal, nor is it its function to do so. See Fed. Rule App. Proc. 3(c).

[7] The relevant portion of the docketing statement provided:

"H. Brief Description of Nature of Action and Result Below:

"Plaintiffs challenged the constitutionality of 42 U. S. C. 411(a)(5)(A), which requires that where both the husband and wife worked in a family business in a community property State, all of the self-employment income must be allocated to the husband. The government conceded the statute's unconstitutionality, and the remaining issues concerned relief, in particular, the standard to apply in place of the invalid statutory standard. The district court certified a class action, and ordered that the Secretary recompute benefits on the principle that the self-employment income of the business be split between husband and wife on the basis of their relative amounts of labor.

"I. Issues to be raised on Appeal:

"The issues on appeal may include: (1) whether the district court's standard based on relative amount of labor should be applied rather than the Secretary's standard based on whether there was a true partnership between the spouses; (2) whether it was error to apply the new rule to earnings records dating back to the beginning of the self-employment program; (3) whether it was error to require that no individual lose benefits as a result of the recomputation required under the order; and (4) whether the notice that the court required be sent to potential class members is appropriate."

1982, the Court of Appeals for the Ninth Circuit granted respondent's motion to dismiss for lack of jurisdiction, citing *Donovan* v. *Richland County Assn. for Retarded Citizens*, 454 U. S. 389 (1982) *(per curiam)*. The Secretary timely filed a petition for certiorari to the Ninth Circuit seeking our review of this dismissal. Because the petition raised an important question concerning this Court's mandatory docket, we granted certiorari. 459 U. S. 1200 (1983). We conclude that a party does not have a right to direct review in the Supreme Court under 28 U. S. C. § 1252 unless the holding of federal statutory unconstitutionality is in issue. We therefore vacate and remand for reinstatement of the appeal.

## II

In the normal course, a party dissatisfied with the judgment of a United States district court must first appeal to the court of appeals, and may then petition for a writ of certiorari in the Supreme Court. Recourse to the court of appeals is a matter of right, 28 U. S. C. § 1291; writs of certiorari are granted at the discretion of the Supreme Court, § 1254(1). The general rule of discretionary Supreme Court review is not without exceptions. Although this Court's mandatory jurisdiction has been minimized through legislation such as the Judge's Bill of 1925[8] and the 1976 repeal of most of the Three Judge District Court Act,[9] Congress has identified a narrow group of cases that merit the immediate and mandatory attention of this Court. Section 1252 is such a direct appeal provision.

---

[8] Act of Feb. 13, 1925, 43 Stat. 936. See *Gonzalez* v. *Automatic Employees Credit Union*, 419 U. S. 90, 98, and n. 16 (1974).

[9] Act of Aug. 12, 1976, Pub. L. 94–381, §§ 1, 2, 90 Stat. 1119 (repealing 28 U. S. C. §§ 2281, 2282 (1970 ed.), amending §§ 2284, 2403). For a discussion of classes of cases that have been removed from the Court's mandatory jurisdiction since 1971, see Tushnet, The Mandatory Jurisdiction of the Supreme Court—Some Recent Developments, 46 U. Cin. L. Rev. 347, 359 (1977).

When a party has a right to pursue a direct appeal to this Court under § 1252, the normal route for appellate review is blocked, and a court of appeals is without jurisdiction. *Donovan* v. *Richland County Assn. for Retarded Citizens, supra,* at 389–390. Thus, the consequence of an erroneous choice of forum can be to preclude any court's review, because by the time a party discovers its error, appeal to the correct forum may be untimely. To avoid that consequence, litigants ought to be able to apply a clear test to determine whether, as an exception to the general rule of appellate review, they must perfect an appeal directly to the Supreme Court. Such a test, of course, must be crafted "with precision and with fidelity to the terms by which Congress has expressed its wishes" in the jurisdictional statute. *Cheng Fan Kwok* v. *INS,* 392 U. S. 206, 212 (1968).

The Secretary and respondent offer different tests. Respondent's position is that when the "literal requirements of § 1252 are satisfied," only the Supreme Court has jurisdiction. *Williams* v. *Zbaraz,* 448 U. S. 358, 366 (1980); see also *INS* v. *Chadha,* 462 U. S. 919, 929 (1983) ("express requisites for an appeal under § 1252 . . . have been met"). Section 1252 establishes four prerequisites for a direct appeal to the Supreme Court: the order appealed from must issue from an enumerated court; the United States or an agency or officer must be a party; the proceeding must be civil; and the order must hold an Act of Congress unconstitutional. Those prerequisites are met in the present case. Therefore, respondent argues, the Secretary's sole avenue for appellate review of the judgment was by direct appeal to this Court. Because the Secretary did not file a notice of appeal to this Court within 30 days of the District Court's order, 28 U. S. C. § 2101(a), respondent contends that the Secretary has lost her right to appellate review of any aspect of the District Court's orders.

The Secretary claims that direct review under § 1252 is available only when the correctness of the constitutional hold-

ing is at issue. She argues that a close examination of the statute and its enactment supports the conclusion that the constitutional holding must be raised on appeal, and not merely decided below, before a party must invoke direct review by the Supreme Court. Under this reading, the Secretary sought review in the proper forum because she challenged the scope of the District Court's remedy and not the correctness of its constitutional ruling. Indeed, by the Secretary's reasoning, had she filed an appeal in this Court, we would have dismissed for lack of jurisdiction.

To articulate a test to resolve the present dispute and to provide guidance for litigants and courts in future cases, we begin with the language and structure of the statute itself.

> "Any party may appeal to the Supreme Court from an interlocutory or final judgment, decree or order of any court of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam and the District Court of the Virgin Islands and any court of record of Puerto Rico, holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies, or any officer or employee thereof, as such officer or employee, is a party.
>
> "A party who has received notice of appeal under this section shall take any subsequent appeal or cross appeal to the Supreme Court. All appeals or cross appeals taken to other courts prior to such notice shall be treated as taken directly to the Supreme Court." 28 U. S. C. § 1252.

A literal reading of § 1252 tells us that parties have a right to direct appeal from a "judgment, decree or order," and not merely a right to direct appeal of a court's "holding an Act of Congress unconstitutional." Under the literal language, a party not contesting the constitutional holding would seem to be required to proceed directly to this Court for review of other aspects of the court's judgment. That literal reading

gains support from the fact that Congress has not limited our review under § 1252 to the federal constitutional issue, but has mandated that when we have properly asserted jurisdiction under § 1252, the whole case is to come before us.[10]

Section 1252, however, presents a case in which "to give the surface literal meaning to a jurisdictional provision . . . would not be consistent with the 'sense of the thing' and would confer upon this Court a jurisdiction beyond what 'naturally and properly belongs to it.'"[11] When Congress created the exceptional right to bypass the court of appeals, it directly linked that right to a lower court's invalidation of an Act of Congress. Although it is in the nature of cases and controversies that the court's judgment may address not only the issue of statutory constitutionality, but other issues as well, such as attorney's fees, remedy, or related state-law claims, the natural sense of the jurisdictional provision is that the holding of statutory unconstitutionality, not these other issues, is what Congress wished this Court to review in the first instance. Thus, the sense of the statute and the literal language are at loggerheads.

The structure of § 1252 helps resolve this tension, and leads us towards the common-sense view that the constitutional holding must be at issue for direct review in this Court to lie. The first paragraph of § 1252 grants the right of direct appeal from the judgment holding an Act of Congress unconstitutional; the second paragraph brings before us the whole case, including appeals filed before and after the constitutional appeal.[12] The clear implication of the second paragraph is that

---

[10] Cf. 28 U. S. C. § 1254(2) (party may appeal a court of appeals' invalidation of a state statute on federal grounds, but review on appeal "shall be restricted to the Federal questions presented").

[11] *Florida Lime and Avocado Growers, Inc.* v. *Jacobsen,* 362 U. S. 73, 94 (1960) (Frankfurter, J., dissenting) (quoting *American Security & Trust Co.* v. *District of Columbia,* 224 U. S. 491, 495 (1912)).

[12] For cases discussing our jurisdiction over the whole case when a direct appeal is properly filed pursuant to 28 U. S. C. § 1252, see *United States* v. *American Friends Service Committee,* 419 U. S. 7, 12, n. 7 (1974) *(per*

parties may have properly lodged appeals in other courts prior to a § 1252 filing. Only after a party has filed a notice of direct appeal pursuant to § 1252 must all other appeals and cross-appeals in the case be taken here. The necessary corollary is that in the absence of such notice, other appeals in the case will follow the normal route for appellate review. The conclusion inherent in the structure of § 1252 is that not all appeals in a case in which an Act of Congress has been held unconstitutional must be taken directly to this Court. Because direct review is linked to a court's holding a federal statute unconstitutional, the logical test of which appeals from a judgment must be brought directly to this Court and which, standing alone, must follow the normal route of appellate review, is whether the issue on appeal is the holding of statutory unconstitutionality.

The history of the enactment of § 1252's statutory predecessor [13] also guides us to a conclusion that Congress consid-

---

*curiam); United States* v. *Raines,* 362 U. S. 17, 27, n. 7 (1960). When we consider the whole case, we are not only implementing Congress' jurisdictional intent expressed in paragraph two of 28 U. S. C. § 1252. We are also exercising judicial discretion to administer our caseload to secure the just, speedy, and inexpensive determination of actions. Fed. Rule Civ. Proc. 1. But neither paragraph two of § 1252 nor our principle of case management should come into play unless we have established first that the Court has appellate jurisdiction.

[13] Act of Aug. 24, 1937, ch. 754, § 2, 50 Stat. 752, provided:

"In any suit or proceeding in any court of the United States to which the United States, or any agency thereof, or any officer or employee thereof, as such officer or employee, is a party, or in which the United States has intervened and become a party, and in which the decision is against the constitutionality of any Act of Congress, an appeal may be taken directly to the Supreme Court of the United States by the United States or any other party . . . ."

As in the current version, appeal could be taken from an interlocutory or final judgment, decree or order. Congress mandated that such appeals "shall be heard by the Supreme Court of the United States at the earliest possible time and shall take precedence over all other matters not of a like character." *Ibid.* The whole thrust of the bill was its focus on the special importance of lower court invalidations of federal statutes.

ered the jurisdictional predicate for mandatory direct review by the Supreme Court to be appeal from the constitutional holding.[14]   Three interrelated justifications for expediting final determinations of the constitutionality of federal statutes recur in discussions of the direct appeal provision. First, when a federal judge strikes down an act of a coequal branch of government, the decision implicates separation of powers,[15] not only through the original exercise of judicial review, but also through this Court's exercise of discretion to hear such a case.   By mandating direct review, Congress asserted its prerogative to define a category of important cases that the Court is not free to ignore.[16]   Second, Congress jus-

---

[14] Floor debate affirms that Congress understood that the predicate to direct appeal was that a party would seek review of the holding that a statute was unconstitutional.   The bill's sponsor, Representative Sumners, explicated the section to mean that the Government "may appeal directly to the Supreme Court in order to expedite the determination of the constitutional question."   81 Cong. Rec. 3272 (1937); see also *id.*, at 3260 (remarks of Rep. Sumners) (case would come up to Court just on question of constitutionality); *id.*, at 3257 (remarks of Rep. Michener) (bill affects only constitutional questions); *id.*, at 3256 (remarks of Rep. Brewster) (bill eliminates delays in determining constitutional question).   The sponsor emphasized the "good, practical common sense" in having "just as little delay between the enactment of Congress and the determination [of its constitutionality] as can be arranged."   *Id.*, at 3268 (remarks of Rep. Sumners).

[15] The impetus in the mid-1930's to establish expedited appeal of holdings of statutory unconstitutionality was courts' response to much of the New Deal legislation, such as enjoining operation of the newly created Tennessee Valley Authority.   See, *e. g.*, Appeals from Federal Courts, Hearings on S. 2176 before the Senate Committee on the Judiciary, 74th Cong, 1st Sess., 13–16 (1935).

[16] As then Senator Hugo L. Black, sponsor in the 74th Congress of a bill for direct appeal from injunctions preventing the effectuation of Acts of Congress explained:

"I see no reason why . . . we should not say to the Supreme Court, '. . . [i]t is not for you to determine whether you will take the case or not.   Those who are charged primarily with enforcing the law in this country are bound to be in closer contact with the necessity for a speedy decision than you are in your court room, and they have determined that this is a case of such

tified imposing mandatory jurisdiction on the Supreme Court because of the need for certainty and uniformity in federal government when an Act may have been declared unconstitutional. It is significant that the first paragraph of § 1252 authorizes a direct appeal to this Court only in civil actions "to which the United States or any of its agencies, or any officer or employee thereof, . . . is a party"; no direct appeal lies if there are only nonfederal parties to the suit. That language reveals a congressional purpose to assure an expeditious means of affirming or removing the restraint on the Federal Government's administration of the law when it would be bound by a holding that the law in question is unconstitutional.[17]

Finally, Congress expressed its sense that declarations of unconstitutionality have ramifications beyond the interests of litigants in the particular case. For this reason, the predecessor statute created the right of intervention by the Attorney General in cases between private parties when the constitutionality of an Act of Congress was drawn into question,[18] as well as the right to direct appeal from a holding

---

great national moment and importance that it must be decided at once.'" *Id.*, at 20.

One commentator suggests that the existence and current definition of § 1252 mandatory jurisdiction rests on a policy of separation of powers. Tushnet, 46 U. Cin. L. Rev., at 358–365. Congressional enactment of mandatory jurisdiction provisions incorporates what the author refers to as the "importance" standard. Thus, the impact of a ruling regarding a statute is recognized as having particularly broad impact.

[17] See, *e. g., McLucas* v. *DeChamplain,* 421 U. S. 21, 31 (1975) (§ 1252 language permits appeal where the Government has participated in litigation "and thus will be bound by a holding of unconstitutionality").

[18] The 1937 Act provided for notice to the Attorney General of private litigation "whenever the constitutionality of any Act of Congress affecting the public interest is drawn in question," and intervention by the United States as of right "for presentation of evidence . . . and argument upon the question of the constitutionality of such Act." Act of Aug. 24, 1937, ch. 754, 50 Stat. 751. The current version of this portion of the original bill appears at 28 U. S. C. § 2403(a).

of unconstitutionality. The Senate Report emphasized that the "decision of the constitutional question may affect the public at large, may be in respect of matters which by the Constitution are entrusted to the care of the Nation, and concerning which the Nation owes a duty to all the citizens of securing to them their common rights." S. Rep. No. 963, 75th Cong., 1st Sess., 4 (1937).[19]

The first two of these concerns are not implicated in cases in which the Government concedes statutory unconstitutionality by its decision not to appeal that aspect of the district court's judgment. Such cases raise no separation-of-powers issue, nor do they implicate the need for certainty and uniformity in the administration of federal law. In the present case, for example, the Attorney General, charged with enforcing federal laws, informed the Congress that he agreed with the courts that the challenged provision in the Social Security Act was unconstitutional.[20] Furthermore, prior to seeking review of the District Court's judgment, the Secretary had agreed not to enforce the statute anywhere

---

[19] See also 81 Cong. Rec. 3268 (1937) (remarks of Rep. Michener) ("If," "when," and "[w]here the constitutionality [of Acts of Congress] is questioned, more than the rights of individual litigants in the suit are involved. The rights of all the people who might be affected by the laws are involved, and in these days time is of the essence in many of these important cases coming before the Supreme Court"); *id.*, at 3265 (remarks of then Rep. Fred M. Vinson) (When the constitutionality of an Act of Congress has been drawn into question, that question "affects not only the litigants in the particular case, but it affects many others. It ought to be decided right in the public interest").

[20] See n. 4, *supra.* Such concurrence of views between the Executive Branch and the Judiciary does not necessarily preclude a case or controversy over the constitutionality of a federal statute. In *INS* v. *Chadha,* 462 U. S. 919 (1983), for example, the agency and the private party agreed that a federal provision was unconstitutional. Congress, however, had intervened as a party, and contested the holding. The constitutionality of the one-House legislative veto was therefore squarely presented on direct appeal to this Court. But that is not the situation in the present case.

and the District Court's remedial order was in effect nationwide. The decision not to raise the issue of statutory unconstitutionality on appeal obviously was intended to bind the Secretary in her nationwide administration of the Social Security Act. When the court and the affected agency reach the same conclusion, there is no need to resort to direct review under 28 U. S. C. § 1252 in an effort to remove the binding effect on the Executive Branch's administration of the law.

The only justification for exerting mandatory jurisdiction in such cases might be the considerable ramifications of district court orders; here, for example, the District Court's remedy provided retroactive relief for a nationwide class. We do not believe that serious consequences alone can support the exercise of our § 1252 jurisdiction. Congress did not enact an open-ended "impact" test for determining which cases should come to this Court for direct review. Although remedial aspects of a case are important, the touchstone of direct appeal under § 1252 is not a party's or our own judgment of the significance of a decision. We exercise that judgment under our discretion to grant certiorari in any civil or criminal case before, as well as after, rendition of judgment. 28 U. S. C. § 1254(1); this Court's Rule 18. In § 1252, Congress mandated direct review not simply for decisions with impact, but rather for decisions whose impact was predicated upon a potentially incorrect exercise of judicial review. See nn. 15, 16, *supra*.

Not only are Congress' justifications for creating an expedited method of direct review not present in cases such as this, but a construction of § 1252 that would require us to review collateral issues coming to us as independent matters, rather than as pendent to the holding of statutory unconstitutionality, would undermine the effectiveness of the direct appeal provision. If we were to adopt respondent's construction of the language, this Court would be required to give precedence to issues outside the congressional definition

of public importance. We would, for example, be obliged to crowd our docket with appeals concerned solely with attorney's fee awards or pendent claims arising under state law—matters that would typically fail to meet our criteria for discretionary review. See this Court's Rule 17. Appeals of this sort would almost certainly be better handled by the courts of appeals, which is where they will lie under the interpretation of § 1252 that we adopt today.

## III

We conclude, therefore, that § 1252 does not warrant a construction that would require appeals raising only issues other than statutory unconstitutionality to be taken directly to this Court. If the four prerequisites to direct appeal pursuant to 28 U. S. C. § 1252 are met, and a party seeks review of the court's holding that an Act of Congress is unconstitutional, that party should file a notice of appeal to the Supreme Court. If a party does not contest the holding of statutory unconstitutionality, and seeks review only of another portion of the court's judgment, the party should file a notice of appeal to the appropriate court of appeals. Although the formal prerequisites to direct appeal under § 1252 were met in the present case, the Secretary did not contest the holding of statutory unconstitutionality. Therefore, the Secretary's appeal belonged in the first instance in the Court of Appeals, which should not have dismissed the appeal for lack of jurisdiction. The judgment of the Court of Appeals is therefore vacated, and the cause is remanded for reinstatement of the Secretary's appeal.

*It is so ordered.*