**Vincent LUCA, Plaintiff,**
**v.**
**Margaret M. HECKLER, Defendant.**

**No. 84–6889–Civ-HASTINGS.**

United States District Court,
S.D. Florida,
Miami Division.

July 24, 1985.

 

 

Lyle D. Lieberman, Miami, Fla., for plaintiff.

Michael Burnbaum, Asst. U.S. Atty., Miami, Fla., for defendant.

## ORDER

HASTINGS, District Judge.

■ Upon the Report and Recommendation of a United States Magistrate and upon independent review of the file it is now ORDERED: the Report and Recommendation are AFFIRMED. Given the weight which this record requires be accorded to the treating physician, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), the Secretary has erred in any contrary reliance she may have placed upon Social Security Ruling 82–51. Her Final Administrative Order is REVERSED with direction to award benefits as appropriate.

## REPORT AND RECOMMENDATION

PETER L. NIMKOFF, United States Magistrate.

This is a review of a final decision of the Secretary denying Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. All administrative remedies have been exhausted. Jurisdiction arises under 42 U.S.C. § 405(g).

For reasons now stated, it is Recommended that the decision of the Secretary be reversed.

### FACTS

Plaintiff was 53 years old at the time of the hearing with a high school education and relevant work experience as a sales representative. He alleges disability beginning in October, 1982 due to arteriosclerotic cardiovascular disease, heart attack, heart damage, open heart surgery, and diabetes.

The medical evidence consists principally of the opinion, diagnosis and clinical findings of the treating physician, Dr. Stanley Feldman, a cardiologist and internist. Dr. Feldman treated Plaintiff since 1979 for angina, arteriosclerotic heart disease and myocardial infarction (a coronary bypass was performed at that time). He continued to treat him through the date of the administrative decision—at which time Plaintiff suffered an acute myocardial infarction.

The medical records show that in September, 1982 Plaintiff underwent a thallium stress test. At the conclusion his treating physician indicated "mild fixed ischemic change in the anteroseptal topography. There is no stress induced ischemic change identified. There is a small area of equivocal or suspicious old fixed change also seen in the inferior wall area." (R. 201).

In March, 1983 Plaintiff was admitted to the hospital. His treating physician submitted a discharge summary which noted

that Plaintiff had continued to experience upper chest pain. A gated wall motion study showed the resting left ventricle ejection fraction was 52% with apical and anterior septal hypokinesis. The right ventricle was globally hypokinetic. An isometric hand study showed no significant wall motion changes in the left ventricle but ejection fraction was 45%. (R. 176).

Minor degenerative changes in the spine were also found. Plaintiff was discharged with a diet and prescriptions for Inderal and Persantine.

In March, 1983 Dr. Feldman completed a form report for Plaintiff's insurance company. He stated that an EKG showed non-specific T and ST segment abnormalities in the antero-septal area. Chest pain was noted. Plaintiff was described as having a Class 4 Impairment: marked limitation (of functional capacity), 60–70%. The physician also checked the section on mental impairments which stated "unable to engage in stress situations or engage in interpersonal relations." He termed Plaintiff totally disabled with no fundamental change seen for the future. (R. 208).

In May, 1983 Dr. Feldman reported that Plaintiff "continued to experience upper chest pain occurring daily occasionally relieved by nitroglycerin lasting for 7–8 minutes on duration, not related to physical exertion." (R. 175).

In November of 1983 Dr. Feldman responded to interrogatories indicating a confirmation of the diagnosis of Plaintiff's impairments and the clinical evidence in support. He reported Plaintiff's claims as

pain across the upper chest, constant fatigue, soreness of the upper right quadrant, and paleness when bending. Dr. Feldman was given the definitions of light and sedentary work as used in the Social Security regulations and stated that Plaintiff had been unable to perform either since August of 1982. Pain was described as mild and not consistent with the objective findings and diagnosis. The patient's complaints were termed credible. A Physical Capacities Evaluation form limited Plaintiff to lifting 5–10 lbs. occasionally, no pushing and pulling of arms controls, sitting maximum 4 hours in eight hour day, standing one hour. Feet could not be used for repetitive movement and rest was necessary "frequently" and "without restriction." Dr. Feldman also indicated that it was necessary for the Plaintiff to lie down for substantial periods of time during the day (R. 217).

Dr. Feldman was asked to comment upon Social Security Ruling 82–51–B [1] (SSR). He Stated:

All patients are different. It is true that we evaluate patients on the basis of tests utilizing aerobic measurements; but their ability to perform these tests can be influenced by many different factors. The fact that even when these tests are negative, does not necessarily imply that a cardiac patient is capable of returning to an occupation, even a sedentary one. Factors such as, effect of cardiac medication emotional stress factor, and over[all] physical condition all contribute

---

1. SSR 82–51 states, in relevant part:
 POLICY STATEMENT: Based on case experience and consultation with disability program physicians throughout the nation, the following impairments have been identified as resulting in predictable physical limitations which preclude specific levels of work based on physical exertion requirements ...
 The conclusions in these examples are directly applicable to the decision only when the individual has no limitations other than those resulting from the medical condition specifically described in each example. The examples are primarily related to physical capacities, including the capacity for sustained exertion, and ad-

ditional reduction of RFC in other areas—mental, for example—will require further consideration.
 B. Examples of Cardiovascular Impairments
 3. Postmyocardial infarction or coronary artery bypass graft, without angina, congestive heart failure, or significant arrhythmias. Heavy work activity would be precluded unless specific exercise testing establishes the ability to engage in heavy work activity. The distinction between the capacity to perform medium and light work activity requires consideration of the medical evidence describing the individual's clinical condition.

to the final decision regarding a patient's ability to return to work. (R. 219).

The record also contains a hospital summary of February, 1984 which indicates that Plaintiff suffered a myocardial infarction. The notes indicate that Plaintiff had a history of ischemic heart disease and was admitted for pressing substernal chest pain radiating to the left side of the jaw and left arm, unrelieved by nitroglycerin. On Feb. 24 ventricular tychardia was detected; an EKG later that day showed no changes. Plaintiff was given medication, became asymptomatic and was discharged a week later.

In July of 1984 Dr. Feldman wrote a letter to claimant's attorney stating that Plaintiff had suffered a myocardial infarction in February; that he continued to have chest pain; that EKGs had consistently shown abnormalities since that admission, and that Plaintiff continued to take significant amounts of anti-anginal pain medication. Dr. Feldman stated:

In light of the previously mentioned symptoms and recent myocardial infarction, I feel that [Plaintiff] can no longer perform "light" work ... I do not feel that he can stand for approximately six hours out of an eight hour day, nor do I feel that he can lift up to ten pounds or even occasionally twenty pounds.

(R. 231).

Plaintiff testified at the hearing. He stated that he had left his position as a district sales manager to take a lesser position as a sales representative because he could not take the stress of travelling. He further stated that even the sales rep position involved great stress for him in dealing with customers. Much of the stress, he admitted, was due to the nature of his personality. As he put it "I'm my own worst enemy ... I make a non-stress situation stressful" (R. 66). He indicated that even when he was sitting down and on the phone he would experience stress-related pain.

Plaintiff worked briefly after his cardiac surgery but eventually left even the sales job due to his health. But for his heart problem he felt he could still be working.

Plaintiff stated he does not like to use the nitroglycerin but he does so twice a day. He is able to walk only about ½ block before he experiences pain and pressure. He does very little physical activity and stays at home most of the time. Occasionally he will help with the housework to the extent of unloading the dishwasher. Plaintiff rarely drives anymore due to pain and if he does drive, it can't be for very long.

Plaintiff indicated that his prior job required him to sit about half of his time and stand or walk about half. He can sit for only twenty minutes at a time now and then must get up and walk around. He also finds it necessary to nap during the day. He can stand about 20–25 minutes.

## THE ADMINISTRATIVE DECISION

The A.L.J. discussed the medical evidence of record and SSR 82–51. He did not discredit the findings or conclusions of the treating physician. Rather, he construed the doctor's opinion to be that Plaintiff suffered only a "mild" impairment and that Plaintiff was much improved after surgery. He noted the negative stress test results. He also stated that Plaintiff was able to sit four hours and that his prior work required four hours of sitting and four hours of walking and standing. He determined that Plaintiff could, therefore, return to his prior work. He further indicated that Plaintiff could work despite the stress involved. In support of that statement he noted that the Social Security hearing was very stressful but that Plaintiff suffered no pain at that time.

Finally, the A.L.J. found the allegation of frequent anginal chest pain to be unsupported by the objective medical evidence and, therefore, incredible.

In applying SSR 82–51 the A.L.J. stated: [P]ost coronary bypass surgery with no significant angina pectoris, heavy work could be precluded ... [T]he distinction between the capacity to perform medium and light work activity would require

consideration of the medical evidence describing claimant's individual clinical condition. The treating physician indicates that the claimant's condition is much improved subsequent to the coronary bypass surgery. His impairment is described as mild, and, therefore the [A.L.J.] must conclude that the claimant could perform at least light work activity.

(R. 53).

## ISSUES

Plaintiff objects to the A.L.J.'s decision as erroneous. He notes five errors: (1) the finding that complains of anginal pain are not credible is not supported by substantial evidence; (2) the A.L.J. failed to properly consider the complaints of pain; (3) the A.L.J. has mischaracterized the evidence, particularly the findings and conclusions of the treating physician; and (4) the finding that Plaintiff can perform light work and can return to his prior employment is without any evidentiary support.

As a fifth issue, Plaintiff contends that the A.L.J. misapplied SSR 82–51 and that the ruling is, in any event, medically invalid.

The applicability of the rule and its validity is discussed first below. Thereafter, the only issue which is addressed is the A.L.J.'s determination of residual functional capacity (RFC). These issues are dispositive of the case and, accordingly, the only issues the court need reach.

## RECOMMENDATION

Social Security Ruling 82–51 is set out in pertinent part in footnote 1. Plaintiff contends, and the Court Finds that SSR 82–51 was misapplied. By its express terms the Ruling applies to cases in which the claimant is status post coronary bypass surgery "without angina." It also speaks of cases in which the claimant is "post myocardial infarction *or* coronary artery bypass graft." It does not, by its terms, include a claimant who is *both.*

Social Security Rulings do not have the force and effect of law or regulations. *Heckler v. Edwards,* 465 U.S. 870, 104 S.Ct. 1532, 1535 at n. 3, 79 L.Ed.2d 878 (1984). They are merely precedents for cases in which the facts are basically the same. *Id.* In the instant case, Plaintiff has demonstrated through clinical evidence that he suffers from anginal chest pain. He is also a person who is status post myocardial infarction *and* coronary bypass. Thus the facts of his case are significantly different from the factual situation contemplated by the Ruling. Indeed, the ruling itself states that its conclusions are directly applicable only where the individual has those limitations "specifically described." For this reason, SSR 82–51 was erroneously applied in this case.

The Plaintiff also argues that the Ruling is medically invalid. He notes that examples 1 and 2 of subpart B of the Ruling refer to the RFC of persons with angina. Both 1 and 2 seem to require a positive stress treadmill exercise test and then draw conclusions about RFC from the tests. Plaintiff has introduced the testimony of several prominent cardiologists to show that stress tests simply cannot measure a person's ability to perform work activity on a sustained basis and some patients have negative stress tests but still suffer anginal pain.

It appears to the Court that only Section 3 of Subpart B of the Ruling was applied in this case. While Sections 1 and 2 are certainly medically questionable, there is no need to reach that issue in the present case. If the A.L.J. in this case assumed that Plaintiff had no anginal pain because his stress test was negative, he finds no support for that conclusion in SSR 82–51.

## RESIDUAL FUNCTIONAL CAPACITY

The Court has thoroughly reviewed the record in this cause. It is beyond cavil that the A.L.J. made many factual mischaracterizations. While he cast Dr. Feldman's findings as "mild impairment" and "much improved," Dr. Feldman clearly found Plaintiff to be severely impaired and totally

disabled, incapable of sedentary or light work. The A.L.J. indicated that Plaintiff's pains were only occasional but Dr. Feldman's report clearly indicates that they were frequent and only "occasionally relieved" by medication. The A.L.J. quoted the Plaintiff as saying that he could sit for four hours, could walk for a moderate length of time and sit for prolonged periods "with no difficulty." The transcript reveals statements by the Plaintiff which are entirely opposite.

The A.L.J. also erred in his critical conclusion on Plaintiff's RFC. Apparently, the A.L.J. sought to substitute SSR 82–51 for a medical opinion on RFC. However, the only medical determination of RFC is the assessment by Dr. Feldman which remains uncontroverted. The A.L.J. did not discredit that assessment, he simply ignored it.

Dr. Feldman found Plaintiff to be limited to carrying 5–10 lbs. occasionally; could only sit, stand or walk for five hours out of eight and required frequent rest and substantial periods for lying down. Clearly this RFC indicates that Plaintiff is unable to return to even sedentary work.

 Unless good cause to the contrary is shown, the opinions, findings and conclusions of the treating physician must be accorded substantial weight. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Here, the conclusion of Feldman regarding RFC is uncontroverted and, indeed, is the only medical evidence of record establishing Plaintiff's work capacity. For this reason, the A.L.J.'s determination of RFC is unsupported by any substantial evidence. The Social Security Ruling is inapplicable for reasons noted earlier and, in any event, cannot constitute medical evidence.

For the foregoing reasons, the decision of the Secretary should be REVERSED and the Secretary directed to award benefits.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the

Honorable Alcee L. Hastings, United States District Judge, within ten (10) days after being served with a copy thereof.