**Hallie B. MANNING, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 88–0023–D.**

United States District Court,
W.D. Virginia,
Danville Division.

April 10, 1989.

---

Hallie B. Manning, pro se.

Phillip A. Clemons, for plaintiff.

Kenneth M. Sorenson, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

JACKSON L. KISER, United States District Judge.

Hallie B. Manning challenges the final decision of the Secretary of Health and Human Services denying Manning's claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416 and 423, as amended. This matter is now before me on the report and recommendation of the United States Magistrate, who recommends that the Secretary's decision be reversed, or at least remanded to obtain additional opinions of medical experts. The Secretary has filed an objection to the Magistrate's report. For the reasons stated below, I partially adopt the Magistrate's recommendation and remand the matter to Secretary to obtain additional opinions of experts regarding the onset date of Manning's disability.

## BACKGROUND

Hallie Manning is 63 years old. It is undisputed that Manning suffers from acute schizophrenia which is currently disabling. This condition was diagnosed first in 1980. Manning claims that her disability commenced on April 6, 1971, her last day of work. The question to be decided is whether Manning was disabled on or before June 30, 1972, the last day she met the disability insured status requirements.

Manning last worked at Pulaski Furniture Company, where she performed unskilled manual labor. She testified in her hearing before the Administrative Law Judge that she lost her job for "gossiping." She said that after she lost her job, she suffered from blackout spells. She says that she has "heard voices" since about 1970, and she told her son that she was "hooked up to a computer." Manning's testimony was not especially coherent.

Phillip Clemmons, Manning's son, appeared at the hearing before the ALJ to represent his mother. Clemmons is not an attorney and has no special knowledge of the Social Security statutes and regulations. Clemmons testified that after an incident involving a neighbor in the 1960's, his mother began hallucinating that she was hooked up to a computer, or being raped by a computer. Clemmons said Man-

ning was fired from her last job because of her strange behavior. Although she has looked for another job since then, she has not been able to obtain one. He said she did not see a psychiatrist in 1971 or 1972 because none were available at that time in Martinsville, where they lived. Clemmons said they did not have transportation to Roanoke, the location of the nearest psychiatrist. Clemmons said there was mental illness in the family—his brother, who was also diagnosed as schizophrenic, had to be committed several times, beginning in 1969.

Manning's sister, Freda Dyer, testified that at the time Manning left her job in 1971, Manning said the men at work were trying to molest her. Dyer said that this could not have been true. Dyer said that the family had considered having Manning committed as long ago as 1965, and that Manning had been having mental problems since 1954 or 1955. Manning's brother, Thomas Thacker, confirmed Dyer's testimony. He said he was advised in 1965 not to have Manning committed, because the conditions at the mental institutions were terrible.

Because Manning never saw a psychiatrist before 1980, she was able to present no documentary evidence of her disability before 1980. The only medical evidence available before 1980 indicates that she was treated for torticollis in 1971. In August 1980, a psychiatrist diagnosed Manning as suffering from acute schizophrenia. Manning was involuntarily committed for two months in 1984, and since then she has been treated regularly at the Patrick Henry Mental Health Center.

## DISCUSSION

The ALJ found that there was insufficient evidence to establish that Manning was disabled before June 30, 1972. The key factor in the ALJ's decision was the absence of any documentary medical evidence to show that Manning was disabled before her insured status expired. Such evidence was not available because Manning was not examined by a psychiatrist until 1980. In reviewing the testimony of Manning and her family, the ALJ conclud-

ed that it was "sincere although vague for the period prior to 1980 and regarding how and why the claimant stopped working in 1971, so that I cannot consider it entirely reliable" (ALJ Decision at 5). Evidently the ALJ found the witnesses credible; the only fault he found with the testimony was lack of details.

As the Magistrate points out in his report, a review of the testimony presented before the ALJ reveals that the witnesses were remarkably consistent: since at least 1970, Manning has suffered from delusions and hallucinations. Manning fantasizes that she is hooked up to a computer. Manning's mental problems in all probability contributed to her loss of her last job in 1971, and she has not been able to get another job since then. Upon review of the evidence, and given the ALJ's conclusion that the witnesses were "sincere," I agree with the Magistrate's conclusion that the ALJ's determination that the testimony was "vague" is not supported by substantial evidence. The testimony indicates that Manning suffered a disabling mental illness before her insured status expired in 1972.

Moreover, objective medical evidence is available that since at least 1980, when she was first examined by a psychiatrist, Manning has suffered from acute schizophrenia. The testimony of Manning's family indicates that her mental problems were no worse in 1980 than they were in 1971. Obviously, chronic mental illnesses such as schizophrenia do not "arise full grown on the day the patient sees the doctor." *See McWilliams v. Bowen*, 674 F.Supp. 12, 13 (W.D.Penn.1987).

In fact, the Social Security Rulings issued by the Secretary recognize that in cases of disabilities arising from nontraumatic origins (i.e., a disease rather than an accident), there may be no contemporaneous doctor's opinion to establish the onset of a disability. Social Security Ruling 83–20 (C.E.1983) addresses this issue. SSR 83–20 provides that for progressive impairments, it may be necessary "to infer the onset date from the medical and other evidence that describe the history and sympto-

matology of the disease process." SSR 83–20 at 111. The ruling establishes a presumption in favor of the claimant: "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* If medical evidence is not available to establish the onset date, then the Secretary may obtain information from "family members, friends, and former employers." *Id.* If the onset date must be inferred, the ALJ should obtain a medical consultant to review the claimant's history. *Id.*

 It is clear from the ALJ's decision that he did not apply SSR 83–20 in his review of the evidence supporting Manning's claim. Once published, a Social Security Ruling is binding on all parts of the Social Security Administration. *See Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 1534 n. 3, 79 L.Ed.2d 878 (1984). If the ALJ had applied SSR 83–20, including the presumption in favor of the claimant regarding the onset date, I have no doubt that the ALJ would have found that Manning was disabled by schizophrenia by April 6, 1971, well before her insured status expired. As the Fourth Circuit has recognized, in many instances claimants will not be able to produce contemporaneous medical evidence to establish the onset dates of their disability. *See, e.g., Turner v. Bowen*, 856 F.2d 695, 698 (4th Cir.1988); *Neal v. Bowen*, 828 F.2d 1027, 1029 (4th Cir.1987); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985). A claimant should not be precluded from a disability claim simply because he or she did not have the opportunity to consult a doctor at the time the disability began.

In Manning's case, her work history, the testimony of her family, and the nature of her mental illness are perfectly consistent with her claim that her disability began on April 6, 1971, the date she claimed. The only bit of evidence lacking to support Manning's claim is a review of her history by a psychiatrist to confirm that her dis-

ability commenced before June 30, 1972, the date that her insured status expired. Accordingly, this matter should be remanded to the Secretary so that the Secretary may obtain the opinion of a consulting psychiatrist, to review Manning's history and the testimony of her family, in order to confirm the onset date. If she wishes, Manning should also have the opportunity to obtain the opinion of her own consulting psychiatrist and present it to the Secretary for consideration. Under SSR 83–20, unless the consulting psychiatrist conclusively determines that Manning did not suffer from disabling schizophrenia on or before June 30, 1972, Manning should be awarded disability benefits. Once the onset date is confirmed, the Secretary shall calculate and pay Manning's benefits.

## CONCLUSION

For the foregoing reasons, this matter is remanded to the Secretary of Health and Human Services in order to obtain the opinion of a consulting psychiatrist to confirm the onset date of Manning's disability.

## ORDER

For the reasons set forth in the Memorandum Opinion filed today, it is hereby

## ORDERED

as follows:

1. The Report and Recommendation of the United States Magistrate filed October 17, 1988, shall be partially adopted, to the extent set out in my Memorandum Opinion.

2. The decision of the Secretary of Health and Human Services is reversed.

3. This action is remanded to the Secretary of Health and Human Services in order that the Secretary may obtain the opinion of a consulting psychiatrist to confirm the date on which Manning was disabled by schizophrenia. If she wishes, Manning may also obtain the opinion of her own consulting psychiatrist and present it to the Secretary for consideration.

4. Unless, in the opinion of the consulting psychiatrist, Manning definitely was

not disabled by schizophrenia on or before June 30, 1972, the Secretary shall then calculate and pay Manning's appropriate disability benefits.

5. This case is hereby dismissed and stricken from the active docket of this Court.