RYAN, Judge,
with whom STUCKY, Judge, joins as to Part A
(dissenting):
A
Whether it is more irregular that the Judge Advocate General of the Air Force *373 (TJAG) “certified” these issues or that the Court chooses to answer them is a close call, particularly in light of the Supreme Court’s recent decision in Clapper v. Amnesty Int’l USA — U.S.-, 133 S.Ct. 1138, 1155, 185 L.Ed.2d 264 (2013) (holding that the respondents lacked standing “because they cannot demonstrate that the future injury they purportedly fear is certainly impending,” and, therefore, cannot establish a sufficient injury-in-fact), and the plain language of Article 67(a)(2) and Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 867(a)(2), 869 (2006).
The putative victim in this pending court-martial, LRM, through her attorney, asked the military judge to order that she be provided copies of motions related to the admission of evidence under Military Rules of Evidence (M.R.E.) 412, 513, and 514, and that the court reserve to her attorney the right to argue on those motions, although, at that point, her attorney admitted that he “[did] not intend to do so.” Trial and defense counsel did not object to LRM receiving informational copies of any motions filed pursuant to those rules. While the military judge found that LRM lacked standing to motion the court for production of documents or be heard through counsel, the Government avers that trial counsel provided LRM, through her attorney, with (1) copies of defense motions to admit evidence pursuant to M.R.E. 412 and 513, (2) the Government’s response to the defense motion to admit evidence under M.R.E. 412, and (3) other trial-related documents.[1]
Based on the foregoing, at this point in the proceedings, LRM — having no intention to speak or legal arguments to raise — has not suffered any actual harm. She alleges no “certainly impending” harm, Clapper, 133 S.Ct. at 1155, and does not allege any divergence between her interests and those of the Government, or that such a divergence in interests is likely, let alone certain, to occur at a later stage in the proceedings. The absence of any actual or imminent injury to LRM, a nonparty to the pending court-martial below, makes TJAG’s unprecedented use of his certification power to certify interlocutory issues to this Court all the more perplexing.
While we are assuredly not an Article III court, we have, up until now, understood ourselves to be bound by the requirement that we act only when deciding a “case” or “controversy.” See U.S. Const, art. Ill, § 2; United States v. Johnson, 53 M.J. 459, 462 (C.A.A.F.2000) (holding that the appellant lacked standing to object to an unlawful subpoena issued to secure the attendance of his wife as a witness at an Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearing where the appellant “was neither deprived of a right nor hindered in presenting his case”); United States v. Jones, 52 M.J. 60, 63-64 (C.A.A.F.1999) (holding that the appellant lacked standing to challenge the violation of a witness’s Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2006), or Fifth Amendment rights and explaining that “[t]he requirement is designed to allow a moving party with a personal stake in the outcome to enforce his or her rights” (quotation marks and citations omitted)). “No principle is more fundamental to the judiciary’s proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.” DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (quotation marks and citations omitted). And paramount to enforcing that jurisdictional threshold is the requirement that, inter alia, a party have standing. See Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).
Integral to standing is a showing of injury-in-fact; “an injury must be ‘concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressa-ble by a favorable ruling.’” Clapper, 133 S.Ct. at 1147 (citing Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010)). This *374 requirement ensures that federal courts resolve only actual disputes where people are being harmed in fact, leaving hypothetical issues of law to be resolved where they should be, by the coordinate executive and legislative branches of government. See Hollingsworth v. Perry, — U.S. -, 133 S.Ct. 2652, 2661, 186 L.Ed.2d 768 (2013) (“The doctrine of standing ... ‘serves to prevent the judicial process from being used to usurp the powers of the political branches.’” (quoting Clapper, 133 S.Ct. at 1146)); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (“[T]he law of Art. Ill standing is built on a single basic idea — the idea of separation of powers.”).
The issues before us are not justiciable because LRM has not been presently harmed and any future injury “is too speculative to satisfy the well-established requirement that threatened injury must be ‘certainly impending.’ ” Clapper, 133 S.Ct. at 1143. Per the representations of both parties, LRM either has or will be permitted to have the documents she requested, and her attorney stated that he does not intend to speak on LRM’s behalf, as LRM’s interests are aligned with the Government’s. Which begs the question: at this point, what, if any, injury would be redressed by a favorable decision from this Court? On these facts, I can see no injury to be remedied, rendering any decision from this Court purely advisory and outside the “judicial Power” of Article III federal courts. See U.S. Const, art. Ill, § 2. On this ground alone the certification should be dismissed.
B.
Additional grounds exist for dismissal of this certification. By acting on the present certificate, the majority approves a road map for evading the ordinary limitations on our review of interlocutory issues. LRM, a non-party to the litigation who has not suffered any actual injury or even a reasonable likelihood of future injury, had interlocutory issues involving hypothetical future harm to her rights certified by TJAG to this Court via Article 67(a)(2), UCMJ. This unprecedented use of Article 67(a)(2) was made despite the fact that to have its interlocutory issues considered, the Government would have to meet the stringent requirements of Article 62, UCMJ, 10 U.S.C. § 862 (2006), and an accused would have to satisfy both the jurisdictional requirements of Article 67, UCMJ, in order to invoke the power of the All Writs Act, 28 U.S.C. § 1651(a) (2006) (allowing this Court to issue “all writs necessary or appropriate in aid of [its] respective jurisdiction”), and the extraordinary burdens needed to meet the criteria for an extraordinary writ. See, e.g., Hasan v. Gross, 71 M.J. 416, 416-17 (C.A.A.F.2012) (“Applying the heightened standard required for mandamus relief, [and] concluding] that based on a combination of factors, a reasonable person, knowing all the relevant facts, would harbor doubts about the military judge’s impartiality.”).
Further exacerbating the impropriety of the situation is that the instant certification was made in the early stages of a criminal case; TJAG’s actions having ground the accused’s proceedings to a halt ostensibly to determine the contours of a right of a witness who has identified no injury-in-fact and no divergence between her interests and those of the Government. Considering that “[t]he exercise of prosecutorial discretion is a prerogative of the executive branch of government,” United States v. O’Neill, 437 F.3d 654, 660 (7th Cir.2006) (citing Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)), and the ordinary state of affairs in our adversarial system where the government, not TJAG, is the accused’s adversary, TJAG’s decision to certify the question whether this nonparty should be allowed to effectively intervene in this criminal proceeding is all the more remarkable.
Nor is the certification proper under any provision of the UCMJ. As relevant to this issue, Article 69(d), UCMJ, provides that a Court of Criminal Appeals (CCA) may review (1) “any court-martial case which (A) is subject to action by [TJAG] under this section, and (B) is sent to the [CCA] by order of [TJAG]; and, (2) any action taken by [TJAG] under this section in such ease.” Article 69(a)-(e), UCMJ, provides the circumstances in which TJAG may modify or set aside the *375 findings and sentence in a court-martial case. Nowhere do these sections provide TJAG with authority to intermeddle on an interlocutory issue that is not case dispositive, let alone the authority to certify an interlocutory issue to this Court.
Yet despite the lack of statutory authority to intrude at this juncture of the case, TJAG “certified” the issues before this Court pursuant to Article 67(a)(2), UCMJ, which presents yet another problem. Article 67(a)(2), UCMJ, provides that “[this Court] shall review the record in all cases reviewed by a [CCA] which [TJAG] orders sent to [this Court] for review.” In reviewing such “cases,” this Court may “act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the [CCA].” Article 67(c), UCMJ; see also Ctr. for Constitutional Rights v. United States, 72 M.J. 126, 128-30 (C.A.A.F.2013).
But there have been no findings or sentence entered here, and in requesting review of this particular interlocutory ruling, TJAG has not properly certified a “case” under Article 67(a)(2), UCMJ. In United States v. Redding, 11 M.J. 100, 102-04 (C.M.A.1981), the Court clearly and fully considered whether TJAG had properly certified a “case” when he requested review of a trial judge’s ruling “which rejected a command determination that a military lawyer requested by the accused ... was unavailable” and where review of that ruling had been initiated directly in the Court of Military Review by a petition for extraordinary relief after the trial judge effectively dismissed the case for failure to make the requested military lawyer available.
The Court directly addressed whether the proceedings before it constituted a “case,” and, therefore, were properly certifiable, and explicitly distinguished the military judge’s ruling from “an intermediate or interlocutory order” solely because “[the ruling] end[ed] court-martial proceedings on the charges; it is, therefore, not an intermediate or interlocutory order but a final decree.” Id. at 104. The Court reasoned that because “the posture of the proceedings ... was tantamount to a final disposition of the ease,” TJAG had properly certified a “case” within the meaning of Article 67(b)(2), UCMJ (now Article 67(a)(2), UCMJ). Id. (internal quotation marks and citation omitted).
Given the plain language of Articles 67 and 69, UCMJ, Redding at best expresses the outermost limits of TJAG’s certification power, allowing him to certify an interlocutory issue only where it is “tantamount to a final disposition” of a case. Id. The majority, however, ignores both the plain statutory language and this precedent and instead, in cursory fashion, relies on United States v. Curtin, 44 M.J. 439 (C.A.A.F.1996), a case which cited Redding to hold, without discussion, and contrary to both the plain language of Article 67, UCMJ, itself and the actual holding in Redding, that a “case” within Article 67(a)(2) “includes a ‘final action’ by an intermediate appellate court on a petition for extraordinary relief,” quoting Redding, 11 M.J. at 104. See Curtin, 44 M.J. at 440; LRM v. Kastenberg, 72 M.J. 364, 367 (C.A.A.F. 2013). Redding narrowly held that “proceedings of the kind in issue are certifiable” and distinguished between action by a military judge that amounts to a “final decree,” which could be certified because “[s]uch action ends court-martial proceedings on the charges,” from a ruling that is “interlocutory in nature,” which could not be certified. Redding, 11 M.J. at 104 (internal quotation marks and citation omitted).[2]
*376 Where, as here, an interlocutory ruling is not “tantamount to a final disposition of the case,” id., the proper channels of review of the issue include (1) review in the ordinary course of appellate review by the CCA under Article 66, UCMJ, (2) an appeal by the Government subject to the limitations of Article 62, UCMJ, or (3) a petition for extraordinary relief from the interlocutory ruling requested by a person with standing to challenge the ruling. See Article 66, UCMJ; Article 62, UCMJ; 28 U.S.C. § 1651(a).
It is entirely unclear why this Court would adopt a more expansive interpretation of “case” in this context, contrary to the plain language of the statute and unsupported by legislative history. The Supreme Court, in those limited instances where its jurisdiction is mandatory, see, e.g., 15 U.S.C. § 29 (particular class of civil antitrust cases), has been most exacting in requiring that the case is actually one it must decide. See Heckler v. Edwards, 465 U.S. 870, 876, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984) (interpreting 28 U.S.C. § 1252 (repealed 1988), to provide mandatory jurisdiction in the Supreme Court only where “the holding of federal statutory unconstitutionality is in issue”); Palmore v. United States, 411 U.S. 389, 395-96, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973) (holding that an appeal as of right would not lie to the Supreme Court under 28 U.S.C. § 1257 (amended 1988), in the context of a District of Columbia court’s upholding a local statute against constitutional attack, and noting that “[jjurisdictional statutes are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes; and we are particularly prone to accord strict construction of statutes authorizing appeals to this Court”) (internal quotation marks and citations omitted).
What the instant certification amounts to is an improper attempt by TJAG to shortcut proper procedure without statutory authority to do so at this juncture and force this Court to review an interlocutory ruling that (1) does not come before us in the form of a petition for extraordinary relief, (2) is neither case dispositive nor an adjudged finding or sentence, and (3) does not involve an injury-in-fact to anyone (other than perhaps the accused’s right to a speedy trial). This is not an effort that should be rewarded. Article 67(a)(2), UCMJ, which requires us to decide certified issues in “cases,” should be strictly construed to require just that, and all interlocutory routes to this Court should require parties with standing and issues that qualify for review under either Article 62, UCMJ, or the All Writs Act and Article 67, UCMJ. By presently certifying issues pursuant to Article 67(a)(2), UCMJ, TJAG circumvented (1) the specific requirements for a Government appeal under Article 62, UCMJ; (2) the heightened scrutiny required for an extraordinary writ by either LRM or the accused; and (3) this Court’s discretion over whether to grant review of this issue if, in the future, LRM suffers or is reasonably certain to suffer injury-in-fact and seeks a writ appeal.
TJAG may employ both congressional and executive routes to answer interlocutory questions definitively where his curiosity cannot await resolution of a particular case and where those claiming a right have no injury-in-fact such that they could seek a writ themselves. Permitting certification of interlocutory issues that are neither justiciable nor case dispositive in any sense distorts the limited role of both TJAG and this Court within the military justice system. For these additional reasons, I would dismiss the certification as improper, and I respectfully dissent.

. In the Government's Response to Judicial Order — Special Victims’ Counsel, the Government avers that it did not provide LRM with a copy of its response to defense motion to admit evidence under M.R.E. 513.

. Moreover, in responding to the Government's argument that "this Court is not authorized to act with respect to matters of law when the CCA has not acted with respect to the same matters of law,” LRM, 72 M.J. at 371, the majority misapplies United States v. Leak, 61 M.J. 234 (C.A.A.F.2005), in holding that, here, as in Leak, this Court may act on the substantive issues "even though the CCA did not reach [them].” LRM, 72 M.J. at 371-72. Leak, however, more narrowly held that this Court could review "a lower court’s determination of factual insufficiency for application of correct legal principles,” Leak, 61 M.J. at 241, and the majority’s passing extension of that holding to the present case is unwarranted. See United States v. Nerad, 69 M.J. 138, 147 (C.A.A.F.2010) (”[T]he power to review a case *376 under Article 67(a)(2), UCMJ, includes the power to order remedial proceedings ... to ensure that the lower court reviews the findings and sentence approved by the convening authority in a manner consistent with a ‘correct view of the law.' ” (quoting Leak, 61 M.J. at 242)).